Alice F.W. ALEXIS, et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA, et al., Defendants.

Civil Action No. 98–151(RMU).

United States District Court, District of Columbia.

March 30, 1999.

Marion E. Baurley, Marion E. Baurley, P.C., Washington,DC, for plaintiffs Alice Alexis, Anna–Marie Brannic, Constance Graham, Mohammed Hmaey, Deloras James, Hermena Kinard, Negussie Timikate and Sandra Thomas.

Catherine Thomas–Pinkney, Law Offices of Catherine Thomas–Pinkney, Washington, DC, for Plaintiff Jasper Mills.

John M. Ferren, Corporation Counsel, D.C., George C. Valentine, Deputy Corporation Counsel, D.C., Jack M. Simmons III, Assistant Corporation Counsel, D.C., Washington, DC, for Defendant District of Columbia.

Mary E. Pivec, Proskauer Rose LLP, Washington, DC, for Defendants Anthony A. Williams and Deloras Shepherd.

## MEMORANDUM OPINION

URBINA, District Judge.

### Granting in Part and Denying in Part the Defendants' Motion to Dismiss

### and Motion for Summary Judgment;

### Denying the Plaintiffs' Motion for Partial Summary Judgment.

## I. INTRODUCTION

The plaintiffs, nine former District of Columbia government employees, bring

this consolidated action under the First and Fifth Amendments of the United States Constitution, 42 U.S.C. § 1983 and (with respect to their pendent and supplemental claims) the common law of the District of Columbia. The plaintiffs claim that the defendants, Anthony Williams, Delores Shepherd and the District of Columbia ("District"), acted unlawfully when they summarily terminated the plaintiffs in January 1997 without prior notice and an opportunity to challenge the dismissals.

This case comes before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment. The plaintiffs move for partial summary judgment. For the reasons stated herein, the court grants in part and denies in part the defendants' motion, and denies the plaintiffs' motion. Specifically, the court grants the defendants' motion to dismiss the plaintiffs' claims of a violation of their Fifth Amendment property interests, the unconstitutionality of section 152 of the Omnibus Consolidated Recissions and Appropriations Act of 1996 ("1996 Appropriations Act"), Pub.L. 104–134, § 152, 110 Stat. 1321, 1321–102 (1996), a violation of Plaintiff Kinard's First Amendment rights, and the wrongful termination of the plaintiffs because the plaintiffs have failed to state a claim upon which relief may be granted.[1] Additionally, the court grants the defendants' motion to dismiss the plaintiffs' claims of defamation and intentional infliction of emotional distress because the plaintiffs have failed to exhaust their administrative remedies. The court denies the defendants' motion to dismiss or, in the alternative, for summary judgment as to the plaintiffs' claim of a violation of their Fifth Amendment liberty interest. With respect to Plaintiff Sandra Thomas, the court grants the defendants' motion to dismiss her entire action on the basis of *res judicata.*

## II. BACKGROUND

All of the plaintiffs in this case held Career Service positions within the government of the District. The plaintiffs all worked for the District's Department of Human Services in the Office of the Controller ("Controller's Office"), except for Plaintiff Mills, who worked for the University of the District of Columbia. At the time of their termination, the plaintiffs held the following positions: Plaintiff Alice Alexis was employed as a Payroll Supervisor, (Pls.' Am. Compl. ¶¶ 4, 6); Plaintiff Anna–Marie Brannic as a Payroll Technician, (Pls.' Am. Compl. ¶ 14); Plaintiff Constance Graham as a Collection Agent, (Pls.' Am. Compl. ¶ 21); Plaintiff Mohammed Hmaey as an Accountant, (Pls.' Am. Compl. ¶ 26); Plaintiff Delores James as a Secretary, (Pls.' Am. Compl. ¶ 31); Plaintiff Hermena Kinard as an Acting Chief, (Pls.' Am. Compl. ¶ 36); Plaintiff Sandra Thomas as an Acting Collection Agent and as an Assistant Supervisor, (Pls.' Am. Comp. ¶ 49); Plaintiff Negussie Timikate as an Accountant, (Pls.' Am. Compl. ¶ 58); and Plaintiff Jasper Mills as a Manager of Treasury Operations (Mills Opp'n to Mot. to Dismiss at 5).[2] The total time spent in government service, in one capacity or another, varied from plaintiff to plaintiff, ranging from a low of six years to a high of 24 years of service.

Sometime after reporting to work on January 24, 1997, the plaintiffs were individually notified, for the first time, that they were being separated from employment as of that date. (Pls.' Am. Compl. ¶ 63.) The plaintiffs all report that they were given 15 minutes to gather their personal belongings and vacate the premises; most report that they were supervised as they collected their belongings and that

---

1. With respect to Plaintiff Jasper Mills, the court grants the defendants' motion to dismiss his Fifth Amendment property interest claim on the basis of failure to exhaust administrative remedies.

2. The defendants list "Valencia Bray" as a plaintiff in this consolidated action, but the plaintiffs' amended complaint does not name this individual as a plaintiff.

they were escorted from their work sites. (Pls.' Opp'n to Mot. to Dismiss, Ex. 2–8.) On their way out of the building, at least two of the plaintiffs observed a memorandum, prominently affixed to the inside of the door, listing their names and informing security officers that those listed were prohibited from future entry into the building. (*Id.* at Ex. 3, 6.) Each of the plaintiffs was also given a termination letter signed by Anthony Williams, the then-Chief Financial Officer ("CFO") of the District. (Pls.' Opp'n to Mot. to Dismiss, Ex. 2–8.) In the letter, Defendant Williams identified the primary source of his authority for taking the now-disputed personnel action, citing section 152 of the 1996 Appropriations Act. (Pls.' Opp'n to Mot. to Dismiss, Ex. 2.) At some point during that same day, Defendant Williams held a press conference to announce that he had fired 165 District employees for performance-related deficiencies. The parties disagree, however, as to the wording and effect of Defendant Williams's comments.

The plaintiffs brought this suit alleging the following seven causes of action: (1) Defendant Williams and the District denied the plaintiffs their Due Process rights and violated their liberty interests as secured by the Fifth Amendment of the United States Constitution by defaming the plaintiffs and terminating the plaintiffs without providing notice and an opportunity to be heard; (2) Defendant Williams and the District violated the plaintiffs' property interest in continued employment (created by the Comprehensive Merit Personnel Act ("CMPA"), D.C.Code Ann. §§ 1–601.1 through 1–637.2 (1992), and protected by the Due Process Clause of the Fifth Amendment of the United States Constitution) by terminating the plaintiffs without cause; additionally, the plaintiffs allege that section 152 of the 1996 Appropriations Act is unconstitutional facially, in its interpretation, and as applied; (3) Defendant Williams and the District violated

Plaintiff Kinard's and Plaintiff Thomas's First Amendment right to free speech when they terminated Kinard and Thomas for speaking out on the District's financial position and its hiring practices; (4) the defendants unlawfully terminated Plaintiff Alexis in retaliation for personnel actions she took involving a subordinate employee, who is allegedly related to Defendant Shepherd; (5) Defendant Williams failed to act with requisite prudence, judgment, and discretion in terminating the plaintiffs; (6) in terminating the plaintiffs, Defendant Williams recklessly published false and defamatory statements that caused them emotional, reputational and financial harm; and (7) Defendant Williams's alleged reckless actions in terminating the plaintiffs were tantamount to an intentional infliction of emotional distress upon them.[3] The plaintiffs seek compensatory and punitive damages, payment of discontinued pension contributions retroactive to the date of termination, costs and attorneys' fees.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiffs will prevail on the merits, but instead whether the claimants have properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court may dismiss a complaint for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding on such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor

---

**3.** The plaintiffs' amended complaint also set forth claims under the Fair Labor and Standards Act and the Americans with Disabilities Act. The plaintiffs now move to withdraw those claims, and the court grants their motion.

of the plaintiffs. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996). However, the court need not accept as true the plaintiffs' legal conclusions. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Finally, if the court considers matters outside of the pleadings in ruling upon a Rule 12 motion to dismiss, it must then treat the motion as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(c).

## B. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment sought "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Rule 56(c) mandates summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing a motion for summary judgment may not rely on mere allegations or denials to prevail, but instead must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Of course, the party moving for summary judgment shoulders the ultimate burden of demonstrating the absence of any genuine issue as to all material facts before a grant of summary judgment can be considered appropriate. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Credibility determinations and the weighing of evidence are functions for the jury, and not for the court ruling on a summary judgment motion. *See id.* at 255, 106 S.Ct. 2505. Rather, the court must accept the evidence of the nonmovants as true and draw all justifiable inferences in their favor. *See id.*

## IV. LEGAL ANALYSIS

### A. Claims of Plaintiff Thomas Barred by *Res Judicata*

■ Plaintiff Thomas brought suit, as a named plaintiff, in a prior action addressing the lawfulness of the defendants' conduct in terminating her and other similarly-situated District government employees. *See District Council 20 v. District of Columbia*, Civ. No. 97–0185, 1997 WL 446254 (D.D.C. July 29, 1997), *remanded on other grounds*, No. 97–7146, 159 F.3d 636 (D.C.Cir. May 14, 1998). The defendants assert that the doctrine of *res judicata* should bar Plaintiff Thomas from relitigating her claims in this action. The court agrees.

■ A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). A party may not litigate any further claims based on the same nucleus of facts that gave rise to the prior litigation because it is that nucleus of facts that comprises the cause of action. *See Page v. United States*, 729 F.2d 818, 820 (D.C.Cir.1984). "[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Id.*

Plaintiff Thomas concedes that the doctrine of *res judicata* "technically" precludes her from relitigating her claims in this action. (Pls.' Opp'n to Mot. to Dismiss at 3.) The plaintiff asserts, however, that the doctrine should not be applied here because she did not allow herself sufficient time to evaluate her case before joining the other plaintiffs in the *District Council 20* action. (*Id.* at 4.) According to the plaintiff, to bar her from pursuing her

claims in this court is to deny her justice and hamper public policy. (*Id.*)

According to the Supreme Court, however,

[s]imple justice is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of *res judicata* serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*

*Federated Dept. Stores,* 452 U.S. at 401, 101 S.Ct. 2424 (internal quotations omitted).

Several of the legal claims made by Plaintiff Thomas are identical to those considered in *District Council 20,* and those which differ nevertheless arise from her January 1997 termination. Thus, the legal claims Plaintiff Thomas asserts in the instant case arose from the same nucleus of facts that prompted her prior litigation. Therefore, the court concludes that the doctrine of *res judicata* bars the plaintiff from pursuing her claims in this action and accordingly grants the defendants' motion to dismiss Plaintiff Thomas's claims in their entirety.

### B. Due Process—Liberty Interest

The plaintiffs allege that the defendants violated their Fifth Amendment liberty interests when they terminated and allegedly defamed the plaintiffs in January 1997. According to the plaintiffs, on January 24 Defendant Williams told the press that a number of District employees were losing their jobs because of their laziness, incompetence, bad attitudes, lack of commitment and lack of skills. (Pls.' Am. Compl. ¶ 65.) The plaintiffs assert that these alleged statements were false and imposed a highly injurious "stigma" upon their personal and professional reputations. (Pls.' Am. Compl. ¶ 70.) The plaintiffs contend that the Due Process Clause obligated the defendants to provide the plaintiffs with an appropriate forum in which to challenge the accuracy of the comments. (Pls.' Am. Compl. ¶¶ 65, 70.) Because the court has looked beyond the pleadings in deciding this issue, the defendants' motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(c).

The Supreme Court has determined that the government's behavior in severing the employer-employee relationship might impermissibly infringe upon an individual's Constitutionally-grounded liberty interest in two distinct ways: either by substantially harming the individual's reputation or essentially foreclosing his career prospects. *See Board of Regents v. Roth,* 408 U.S. 564, 572–576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, if the government employer makes a charge against the employee that might seriously damage his standing and associations in the community by asserting, for example, "that he had been guilty of dishonesty, or immorality," an actionable claim might arise. *Id.* at 573, 92 S.Ct. 2701. Similarly, the government would also violate an individual's liberty interest if it imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities (hereinafter referred to as "foreclosure" claims). *Id.*

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court specified that parties alleging government infringement of their liberty interests must show that the governmental action at issue distinctly altered or extinguished a right or status previously recognized by state law. *Id.* at 710–711, 96 S.Ct. 1155. In the employment context a plaintiff asserting a defamation-based liberty interest claim against his government employer must demonstrate more than an injury to his reputation stemming from a government official's defamatory statements. *See id.* at 709–710. The plaintiff must also demonstrate that the defamation occurred in conjunction with an official governmental personnel action such as termination from

employment. *See id.* Thus, liberty interest claims stemming from an injury to reputation are sometimes referred to as "reputation-plus" claims. *See, e.g., O'Donnell v. Barry,* 148 F.3d 1126, 1139–1140 (D.C.Cir.1998). The plaintiffs assert both "reputation-plus" and "foreclosure" claims against the defendants, and the court now addresses each in turn.

### 1. Reputation–Plus

■ Under the Due Process Clause, all derogatory statements made by government employers in the process of termination of employment do not require a name-clearing hearing. It is only where a person's good name, reputation, honor or integrity is at stake because of the government's actions that notice and an opportunity to be heard are essential. *See Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The D.C. Circuit has held that courts addressing stigmatic injury claims must distinguish between the types of accusations that call into serious question those personal characteristics that are central or enduring in nature, and those accusations that merely amount to commentary on one's job performance. *See Harrison v. Bowen,* 815 F.2d 1505, 1518 (D.C.Cir.1987). Charges falling within the former category, e.g., accusations of dishonesty, the commission of a serious felony, manifest racism, serious mental illness, or a lack of intellectual ability, are considered likely to create a stigma of Constitutional proportions, while those falling within the latter category are not.

> The former characteristics imply an inherent or at least a persistent personal condition, which both the general public and a potential future employer are likely to want to avoid. Inadequate job performance, in contrast, suggests a situational rather than an intrinsic difficul-

ty; as part of one's biography it invites inquiry, not prejudgment.

*Id.* at 1518. It follows, then, that accusations falling within the former category must be characterized as "material" to a liberty interest claim, while those falling within the latter category must be considered immaterial.

The plaintiffs assert that Defendant Williams stigmatized them on January 24, 1997, when he publicly criticized their performance while announcing their termination from District employment. Applying the rationale of *Harrison* to this case, at least two of Defendant Williams' alleged descriptions of the plaintiffs' purported shortcomings may have had a stigmatizing effect. The plaintiffs allege that Defendant Williams branded them as "lazy" and "incompetent." A charge of laziness is a global characterization of an individual's enduring disposition toward avoiding effortful activity. A charge of incompetence strongly suggests not only that the plaintiffs did not satisfactorily perform their job duties, but that they were *inherently incapable* of so doing. The court concludes that these comments, if actually made, together possessed sufficient potential to legally stigmatize the plaintiffs and would therefore constitute a material fact if established.

■ The question as to just what Defendant Williams said, however, has not been satisfactorily answered.[4] The defendants suggest that Defendant Williams said the plaintiffs "lacked commitment and skills" and, perhaps, that they were incompetent. (Defs.' Mot. to Dismiss at 9.) The defendants rely on a newspaper article from *The Washington Post* for support, (Defs.' Reply Br. at 9 n. 10), but the article does not provide unambiguous support for their contention. For example, the descriptive phrase "lack of commitment," is attributed

---

4. For telling evidence that there is indeed a genuine factual dispute over the content of Defendant Williams's remarks, one need only consider footnote 10 in the defendants' Reply Brief. There, the defendants assert that the plaintiffs "have exaggerated and mischaracterized the content of the alleged stigmatizing statements underlying their liberty interest and defamation claims." (Defs.' Reply Br. at 9 n. 10.)

to Defendant Williams and placed in quotations in the article, while the descriptors "incompetent," "lazy" and "lacking skills," though also seemingly attributed to Defendant Williams, are not placed within quotes.[5] As to the descriptors not placed within quotes in the article, the defendants have not offered, and the court has not otherwise identified, a sure guide for accurately distinguishing between what was said by Defendant Williams and what was not.[6]

As stated earlier, a party moving for summary judgment bears the burden of showing the absence of any genuine issue as to all the material facts. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "To satisfy his burden, the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." *See 6 Moore's Federal Practice,* ¶ 56.15[3] (2d ed.1995). Of course, this does not mean that the movant is obligated to support its motion with affidavits, depositions, answers to interrogatories and the like when the nonmoving party will bear the burden of proof at trial on a dispositive issue. *See Celotex v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, the motion "may, and should, be granted so long as whatever is before the district court demonstrates that the standard set for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

The court concludes that the defendants have not met their burden. The court has

no sure way of determining, from a single, ambiguous newspaper article, just what Defendant Williams actually said when he terminated the plaintiffs' employment. Because the plaintiffs' characterization of Defendant Williams's comments would be material if established, and because their characterization finds support in the record, the court denies the defendants' motion for summary judgment on this issue.

## 2. Foreclosure of Job Opportunities

The plaintiffs also assert that Defendant Williams's allegedly stigmatizing remarks, coupled with the plaintiffs' termination from District employment, have unconstitutionally foreclosed them from pursuing employment in their chosen professions.[7] (Pls.' Am. Compl. ¶ 70.) In *Kartseva v. Department of State,* 37 F.3d 1524 (D.C.Cir.1994), the D.C. Circuit explained that there are two ways in which governmental action implicates a Fifth Amendment liberty interest under the foreclosure prong. The first is where the government's action has formally or automatically excluded the plaintiffs from future government employment opportunities, and the second is where the plaintiffs can demonstrate that the government's action has the broad effect of largely precluding them from pursuing their chosen careers. *See id.* at 1527–1528.

### a. Formal or Automatic Exclusion

■ Only Plaintiff James alleges any facts suggesting that she has been formally or automatically excluded from future government employment.[8] In her affida-

---

**5.** Although the plaintiffs also assert that Defendant Williams said they had "bad attitudes," this phrase appears nowhere in the newspaper article, nor anywhere else in the plaintiffs' supporting exhibits. The court concludes that the plaintiffs have failed to establish that Defendant Williams uttered this phrase.

**6.** The defendants cannot, for example, argue that only those statements appearing in quotations can properly be attributed to Defendant Williams. The defendants themselves assume for the purpose of summary judgment that Williams said the plaintiffs were incom-

petent and lacked skills, even though neither of these descriptors was placed within quotation marks in the article. (Defs.' Mot. to Dismiss at 9.)

**7.** For the purpose of deciding the foreclosure issue, the court assumes, without deciding, that the plaintiffs' representation of Defendant Williams's statements, as modified by footnote 3 *supra,* is accurate.

**8.** The remaining plaintiffs merely offer the conclusory assertion that they "all ... have been foreclosed from future D.C. government

vit, Plaintiff James states that someone in the District's personnel office told her that she was not eligible for future District government employment work due to the manner of her termination. (Pls.' Opp'n to Mot. to Dismiss, Ex. 5 at 2.)

The fact that Plaintiff James has presented some evidence in support of her claim is not enough, however, to survive summary judgment. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

> The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict ....

*Id.* at 252, 106 S.Ct. 2505.

Plaintiff James offers no other evidence demonstrating that she has been barred from future government service. Her claim rests solely on a single conversation with an unidentified personnel office worker. Even if a jury accepted the plaintiff's account as true, no reasonable jury could find, by a preponderance of the evidence, that she has been formally or automatically barred from future District government employment. Without the possibility of such a finding, Plaintiff James's claim under this sub-prong must fail. The court therefore grants the defendants' motion for summary judgment against the plaintiffs on the issue of broad foreclosure of job opportunities.

### b. Broad Preclusion from Employment in Chosen Career

■ To prevail on a broad foreclosure claim, the plaintiffs must meet a high standard by demonstrating that the defendants' actions have seriously affected, if not destroyed, the plaintiffs' ability to ob-

tain employment in their chosen fields. *See Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1506 (D.C.Cir.1995). The plaintiffs must demonstrate an injurious impact on their employment prospects that is "beyond a disadvantage or impediment." *Mazaleski v. Treusdell,* 562 F.2d 701, 713 (D.C.Cir.1977).

Four of the plaintiffs aver that they have had no success obtaining employment within their respective fields despite repeated attempts to do so. Plaintiff Alexis, for example, states that she has applied for more than 30 positions in both the government and private sector, has been granted only two interviews, and was able to secure just one temporary position doing clerical work. (Pls.' Opp'n to Mot. to Dismiss, Ex. 2.) Plaintiff Graham has submitted more than 100 resumes and/or applications for employment, but has not succeeded in obtaining employment of any kind. (*See id.* at Ex. 4.) Plaintiff James has held three temporary positions despite applying for more than 30 private-sector positions. (*See id.* at Ex. 5.) Plaintiff Kinard states that she has had to settle for employment with Wal–Mart despite having mailed more than 20 resumes to prospective employers in her field. (*See id.* at Ex. 8.)

■ The court has not been persuaded that a grant of summary judgment against these plaintiffs is appropriate. At this stage, the plaintiffs bear the burden of showing that a reasonable jury could find that Defendant Williams's allegedly stigmatizing comments could have foreclosed the plaintiffs from employment in their respective fields. As mentioned earlier, the court is obligated to accept the plaintiffs' evidence as true and to draw all justifiable inferences in the plaintiffs' favor. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. In their respective affidavits, the plaintiffs maintain that they have been denied employment within their professions altogether. This fact, viewed in con-

---

employment." (Pls.' Opp'n to Mot. to Dismiss at 9.) They neither allege nor produce

any supporting facts for this legal conclusion.

junction with each plaintiff's relatively lengthy work history, could well persuade a reasonable jury to find in their favor. Though the question is a close one, and the evidence presented is less informative than would be preferred, the court concludes that the exercise of due caution precludes a grant of summary judgment against these plaintiffs on this issue.

■ Summary judgment against the four other plaintiffs is appropriate, however. Plaintiff Mills, for example, merely asserts the legal conclusion that he has been foreclosed from employment. Plaintiff Mills states that he "has been reluctant" to seek work in his field because any application for a position in his chosen field would "ultimately reveal" the circumstances of his termination. (Mills Opp'n to Mot. to Dismiss at 5–6, ¶ D.) Mills offers no objective evidence suggesting foreclosure, asserting instead that such evidence will be forthcoming at trial. (*Id.* at 7–8, ¶ G.) Relying as he does on presumptions and unsupported legal conclusions rather than facts, the court concludes that Plaintiff Mills has failed to demonstrate broad foreclosure.

According to the plaintiffs' Opposition Brief, Plaintiff Hmaey has held just one temporary position since his termination. (Pls.' Opp'n to Mot. to Dismiss at 9.) However, Plaintiff Hmaey provides the court with no evidence illustrating either the number or nature of his attempts to obtain employment either within his chosen field or outside of it. The court cannot determine whether the plaintiff's temporary position was the fruit of one application for employment or of 100 applications. Moreover, the court cannot determine whether that temporary position was within Plaintiff Hmaey's chosen profession or not. The court therefore concludes that Plaintiff Hmaey has failed to demonstrate broad foreclosure.

■ Plaintiffs Brannic and Timikate acknowledge that subsequent to their termination from District government employment, they have had opportunities, albeit temporary ones, to work within their professions. Notwithstanding the fact that the positions each plaintiff secured were not permanent, and thus were understandably unsatisfactory to them, the court concludes that Plaintiffs Brannic and Timikate have failed to make an arguable showing of foreclosure. No reasonable jury could find that they have been precluded from employment in their respective fields. Accordingly, the court grants the defendants' motion for summary judgment as to Plaintiffs Brannic, Timikate, Hmaey and Mills on the broad foreclosure issue.

### C. Due Process—Property Interest
#### 1. Plaintiff Mills

■ The defendants assert, and the court agrees, that Plaintiff Mills's property interest claim should be dismissed because he failed to exhaust available administrative remedies before filing his claim in this court. (Defs.' Reply Br. at 7–9.) After being terminated in January 1997, Plaintiff Mills and other former District employees appealed their terminations to the Office of Employee Appeals ("OEA"). (Defs.' Supp. Mem., Ex. B.) The OEA issued an "Initial Decision" concluding that the plaintiff had lost any existing right to continued employment he may have had when Congress passed section 152 of the 1996 Appropriations Act. (*Id.*)

A "Notice of Appeal Rights," attached to the decision, informed the plaintiff that he could file a petition for review of the Initial Decision with the OEA, i.e., that he could obtain a "Final Decision" on his claim. (*Id.*) The notice also informed Plaintiff Mills that he would then be free to seek review of the OEA's Final Decision in the Superior Court of the District of Columbia. (*Id.*) Plaintiff Mills elected not to file a petition for review. (Mills Opp'n to Mot. to Dismiss at 1–3.) Under similar circumstances, the D.C. Court of Appeals has treated a plaintiff's failure to obtain a Final Decision from the OEA as a failure to exhaust administrative remedies. *See*

*Taggart–Wilson v. District of Columbia,* 675 A.2d 28 (D.C.App.1996). There, a police officer challenging her nonpromotion filed suit against the Metropolitan Police Department in Superior Court. *See id.* at 29. The Superior Court dismissed the action, ruling that the plaintiff first had to exhaust her administrative remedies. *See id.* The plaintiff appealed that decision. *See id.* Soon thereafter she filed an administrative claim with the OEA and received an Initial Decision. *See id.* The plaintiff then filed a motion to stay the OEA proceedings pending the outcome of her appeal from the Superior Court's decision to dismiss her claim. *See id.* The District Court of Appeals affirmed the trial court's decision, concluding that "the pendent proceedings before the OEA should run their full course" before the plaintiff sought judicial review of her claim. *Id.*

Like the plaintiff in *Taggart–Wilson,* Plaintiff Mills obtained an OEA Initial Decision and then attempted to sue in an. Article III court without obtaining an OEA Final Decision. The court concludes, based on the holding of *Taggart–Wilson,* that Plaintiff Mills was obligated to obtain an OEA Final Decision on his due process claim before seeking judicial relief in this court. By failing to obtain a final administrative decision, the plaintiff failed to exhaust his administrative remedies. Therefore, the court grants the defendants' motion to dismiss against Plaintiff Mills on the issue of a due process property interest violation.

### 2. All Plaintiffs except Plaintiff Mills

The plaintiffs allege that the defendants violated their property interest in continued employment, and therefore their requisite right to procedural due process, by terminating them without providing prior notice and an opportunity to challenge the dismissals. (Pls.' Am. Compl. ¶¶ 72–73.) The plaintiffs find this property interest in the CMPA. Relevant provisions of the CMPA explicitly state that Career Service employees can only be terminated "for cause" and only after certain procedural requirements are satisfied. *See, e.g.,* D.C.Code Ann. § 1–617.1(b) (stating nonprobationary Career Service employees may be suspended, demoted or removed only for cause); D.C.Code Ann. § 1–617.3 (stating Career Service employees facing adverse personnel action have entitlement to written notice, a copy of the charges, and reasonable time to file written answer, with affidavits, to the charges). The plaintiffs conclude that this property interest in continued employment brings them within the procedural protections provided by the Fifth Amendment's Due Process Clause. *Cf. Roth,* 408 U.S. at 576–578, 92 S.Ct. 2701 ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.").

 The defendants maintain that section 152 of the 1996 Appropriations Act negated any property interest in employment conferred upon the plaintiffs or other similarly-situated Career Service employees. (Defs.' Mot. to Dismiss at 12–13.) Section 152 mandated that all accounting, budget and financial management employees would henceforth act under the direction and control of the CFO and serve at his pleasure.[9] *See* 1996 Appropriations Act § 152, 110 Stat. at 1321–102. The

---

**9.** Section 152(a), which has since expired, provides in relevant part as follows:

Notwithstanding any other provision of law, for the fiscal years ending September 30, 1996 and September 30, 1997, the heads and all personnel of the following offices, together with all other District of Columbia executive branch accounting, budget, and financial management personnel, shall be appointed by, shall serve at the pleasure of, and shall act under the direction and control of the Chief Financial Officer:

The Office of the Treasurer.

The Controller of the District of Columbia.

The Office of the Budget.

The Office of Financial Information Services.

The Department of Finance and Revenue.

110 Stat. at 1321–102.

defendants assert that section 152 superceded, by design, all relevant provisions of the CMPA that establish "for cause" employment status, including pre-termination procedural protections, for the targeted classes of District employees identified by the statute. According to the defendants, section 152 rendered the plaintiffs "at will" employees subject to summary dismissal by the CFO at any time. The defendants conclude that the plaintiffs, lacking an identifiable property interest in their positions, have therefore failed to state a claim. The court agrees.

These competing claims and the issues raised were recently addressed in *District Council 20*, 1997 WL 446254. Like the plaintiffs in the instant case, the *District Council 20* plaintiffs were among the 165 District employees summarily terminated by Defendant Williams on January 24, 1997.[10] Like the plaintiffs in the instant case, the *District Council 20* plaintiffs asserted that Defendant Williams's actions violated their CMPA-based property interest in continued employment. *See District Council 20*, 1997 WL 446254 at *1–2. In a thorough, well-considered opinion, the reasoning of which this court now adopts, the *District Council 20* court concluded that the CMPA had in fact created for the plaintiffs a protected property interest in continued employment, but that these protections were lost when Congress enacted section 152 of the 1996 Appropriations Act.

In reaching this result, the court first noted that Congress has undisputed plenary legislative authority over the District, which necessarily includes the authority to repeal any or all provisions of the CMPA.

*See District Council 20*, 1997 WL 446254 at *3. After analyzing the plain language of the statute, the legislative history of the 1996 Appropriations Act, and that of the 1995 District of Columbia Financial Responsibility and Management Assistance Act[11] ("1995 Financial Responsibility Act"), the court concluded that section 152 must reasonably be understood to have intentionally converted the targeted employees to at will employees. *See id.* at *4–6. In consequence, the court held that section 152 directly conflicted with the CMPA's "for cause" provisions and the provisions imposing various pre-termination procedural requirements on the CFO. *See id.* at *6. The court concluded that section 152 had implicitly repealed all conflicting provisions of the CMPA upon its enactment. *Id.* Therefore, the CFO had not infringed upon any property interest in continued employment when he summarily terminated the *District Council 20* plaintiffs.

The plaintiffs in the instant matter rest their property interest claim solely on the aforementioned provisions of the CMPA. Having adopted the reasoning set forth in *District Council 20*, this court rules that section 152 converted the plaintiffs to at will employees, thereby ending the plaintiffs' pre-termination procedural protections. Consequently, the court concludes that the plaintiffs have not succeeded in stating a claim upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6). Therefore, the court grants the defendants' motion to dismiss this claim.

## D. Constitutionality of Section 152

Anticipating the foregoing construction of section 152, the plaintiffs assert that the

---

**10.** In fact, one of the *District Council 20* plaintiffs also appears in the instant case. As discussed earlier in this opinion, the court dismisses this plaintiff on the basis of *res judicata*.

**11.** The 1995 Financial Responsibility Act, 109 Stat. 97 (1995), created, *inter alia,* what is commonly referred to as the District of Columbia "Control Board" and the office of the CFO. *See* §§ 101–108, 109 Stat. 97 at 100–107 (establishing the

Control Board); § 302, 109 Stat. 97 at 142–148 (establishing the office of the CFO). The court looked at this Act's history in an effort to ascertain the rationale underlying both its enactment and that of section 152, which modified the CFO's scope of authority. The court determined that a primary motivating principle for their enactment was the District's then-worsening financial crisis. *See District Council 20*, 1997 WL 446254 at *5.

statute is invalid under the Due Process Clause. (Pls.' Am. Compl. ¶ 74). The plaintiffs assert that a statutory provision converting some, but not all, District Career Service employees to at will status cannot stand because it is not "substantially related" to Congress's concededly legitimate interest in re-establishing the District's financial health and its ability to efficiently and effectively serve its citizens. (Pls.' Opp'n to Mot. to Dismiss at 14–17.) The plaintiffs maintain that section 152 will create tyrannical employers who hire and fire capriciously, discourage employees from speaking out on issues of potential interest to the public, and inevitably enmesh the District in increased employment-related litigation. (*Id.*)

The plaintiffs urge that the court employ heightened scrutiny in reviewing the statute's constitutionality because the statute is a key component of a series of legislative enactments intended to "provide services to the public, including public safety." (Pls.' Opp'n to Mot. to Dismiss at 14–15.) The case law cited by the plaintiffs does not support their position regarding heightened scrutiny.[12] The seminal case on the level of scrutiny to employ when reviewing a statute's constitutionality is *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The *Duke Power* Court upheld the liability-limiting provisions of a federal statute intended to promote the development of nuclear energy while simultaneously protecting the public from nuclear accidents. *See id.* at 82–83, 98 S.Ct. 2620. The Court concluded that the challenged provisions represented "a classic example of an economic regulation—a legislative effort to structure and accommodate the burdens

and benefits of economic life." *See id.* at 83, 98 S.Ct. 2620 (internal quotations and citation omitted). The Court held that statutes of this kind enjoy the traditional presumption of constitutionality and must be upheld absent proof that Congress acted irrationally or arbitrarily in enacting them. *See id.*

■ Similar to the statute in the *Duke Power* case, section 152 balanced competing economic interests. Namely, section 152 balanced the interests of the District government in improving both its financial position and the delivery of services against the interests of Career Service personnel in having a pre-termination process. The pre-termination process represented an economic benefit to its holders but a cost to the District. Section 152 allowed Defendant Williams to substantially reduce that cost by giving him the authority to terminate specified classes of employees without first initiating resource-consuming proceedings. At bottom, section 152 simply shifted the balance of economic burdens and benefits shared by a governmental employer and its employees in hopes of greater overall efficiency. Section 152 thus falls within that class of economically-oriented statutes discussed in *Duke Power* and requiring a rational basis review.

The plaintiffs offer little factual support for their assertion that section 152 attempts to "provide services to the public, including public safety," and they offer no case law to support their assertion that such statutes warrant heightened scrutiny. Accordingly, the court declines the plaintiffs' request for heightened scrutiny of section 152 and instead adopts the rational basis standard of review required under

---

12. The plaintiffs cite two cases to support their assertion: *Morascini v. Comm'n of Public Safety*, 236 Conn. 781, 675 A.2d 1340 (1996); and *Townes v. St. Louis*, 949 F.Supp. 731 (1996). (Pls.' Opp'n to Mot. to Dismiss at 14–15.) *Morascini* involved a First Amendment analysis of a state statute requiring a nightclub owner to pay for police security at a rap concert. *Townes* involved a Due Process

analysis of a city ordinance blocking access to a residential street at one of its intersections. The plaintiffs make no effort to demonstrate how these cases support their position regarding the appropriate standard of review in the instant case, and after careful review, the court does not discern a useful relationship between the cited cases and the plaintiffs' assertion.

*Duke Power.* To prevail on this issue, then, the plaintiffs must demonstrate that either arbitrary or irrational motivations led Congress to enact the statute. *See Duke Power,* 438 U.S. at 83, 98 S.Ct. 2620.

The plaintiffs maintain that Congress's actions were irrational because section 152 would lead to increased employment-related litigation that had previously been barred by the CMPA. Additionally, the plaintiffs assert that section 152 irrationally undermined the job security of the very class of employees whose duty it was to expose government waste and fraud. In essence, the plaintiffs suggest that section 152 is unconstitutional because Congress should have enacted legislation more efficiently ameliorating the District's fiscal position than section 152 could, and at a lower social cost to District government employees.

It is long-settled that the court must not substitute its social and economic judgment for that of the legislature, which has broad discretion to address and remedy economic problems. *See e.g., Ferguson v. Skrupa,* 372 U.S. 726, 729–731, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). In this respect, absent a showing by the plaintiffs that Congress's actions were arbitrarily undertaken, or that it had no rational basis for its belief that section 152 would aid in the District's financial rehabilitation, the court must uphold the statute. The plaintiffs have not made such a showing. Therefore, the court concludes that section 152 was constitutionally enacted. The plaintiffs, consequently, have failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Accordingly, the court grants the defendants' motion to dismiss this claim.

### E. First Amendment Claim of Plaintiff Kinard

Plaintiff Kinard asserts that the defendants terminated her for criticizing hiring and spending practices within the Controller's Office. (Pls.' Am. Compl. ¶¶ 77–80.) In a series of letters mailed between March 5 and March 7, 1996, the plaintiff repeatedly requested that the District investigate the Payments and Collection Division of the Controller's Office. (Pls.' Opp'n to Mot. to Dismiss, Ex. 8.) She alleged that improper motives lay behind the hiring of an allegedly unqualified supervisor within that Division, that a union representative received preferential treatment regarding the assignment of overtime, and that Defendant Shepherd mismanaged the Division's revenue collection activities.[13] (*Id.*) Plaintiff Kinard asserts that the First Amendment protected her efforts to expose unlawful District management practices because she raised issues of public concern in speaking out. (Pls.' Opp'n to Mot. to Dismiss at 19, 20.) According to Plaintiff Kinard, but for her protected speech activity, she would not have been terminated; thus, she asserts, her removal was unconstitutional.

A court must examine a claim of retaliation in violation of the First Amendment by undertaking a four-part analysis. *See O'Donnell v. Barry,* 148 F.3d 1126, 1133 (D.C.Cir.1998). First, the employee must show that she spoke on a matter of public concern. *See id.* at 1133. Second, the court must consider whether the government's interest in promoting efficient public service outweighs the plaintiff's interest, as a citizen, in commenting upon matters of public concern, or that of potential audiences in hearing what she has to say. *See id.* Third, the employee must show that her speech was a substantial or motivating factor in prompting the retaliatory act of which she complains. *See id.* Lastly, the employer should have the opportunity to show, by a preponderance of the evidence, that it would have taken the same action even in the absence of the

---

**13.** Plaintiff Kinard mailed letters to the head of her union, two District Councilwomen, then-Mayor Barry, and Defendant Williams. (Pls.' Opp'n to Mot. to Dismiss at 18–19; Ex. 6, 8.)

protected conduct. *See id.* The first two factors involve questions of law for the court to resolve, while the latter two involve questions of fact ordinarily left to the jury. *See id.*

■■■■ After carefully examining the record, the court concludes that Plaintiff Kinard's claim must fail because she does not demonstrate any causal nexus between her speech activity and her removal. To establish a causal link, the plaintiff is free to rely on circumstantial evidence of retaliation. *See, e.g., Clark v. Library of Congress,* 750 F.2d 89, 101 (D.C.Cir.1984) ("It is clear, however, that a plaintiff need not present direct evidence . . . to meet his burden of showing that protected conduct was a substantial or motivating factor in the hiring decision."). Moreover, the plaintiff need not show that her speech activity was the *sole* reason for her termination. *See id.* at 101 n. 25. Plaintiff Kinard, however, offers no evidence from which the court may reasonably infer that her speech activity played any role in her termination.

To establish causation, the plaintiff merely observes that her termination came less than one year after her letter-writing campaign and that she consistently had received "Outstanding" performance appraisals prior to her having written the letters.[14] (Pls.' Am. Compl. ¶¶ 79, 80; Pls.' Opp'n to Mot. to Dismiss at 22.). Plaintiff Kinard's evidence of causation is problematic in several respects. First, the timing of Plaintiff Kinard's termination does not, in and of itself, suggest a causal link. Second, the plaintiff presents no evidence that Defendant Williams or Defendant Shepherd retaliated against her during the ten-month interval between the time she wrote the letters and her termination. Finally, Plaintiff Kinard offers no evidence showing that Defendant Williams received input from Defendant Shepherd before making his decision to terminate the plain-

tiff. In short, the plaintiff has failed to demonstrate that her speech activity was a substantial or motivating factor in her dismissal. Therefore, the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Accordingly, the court grants the defendants' motion to dismiss this claim.

### F. Wrongful Termination

The fourth and fifth claims in the plaintiffs' amended complaint allege wrongful termination. (Pls.' Am. Compl. ¶¶ 82–87.) One of the two claims is jointly alleged by all of the plaintiffs (entitled "Joint Claim"), while the other claim is that of Plaintiff Alexis alone (entitled "Individual Claim"). The Joint Claim asserts that Defendant Williams's authority to dismiss at will employees was not absolute; he was under a mandate to act with prudence, discretion, and good judgment, and he failed to do so when he summarily terminated the plaintiffs. (*Id.* ¶¶ 86–87.) The Individual Claim alleges that Plaintiff Alexis was terminated in retaliation for supervisory actions she took against an employee who worked under her. (*Id.* ¶¶ 82–84.) Plaintiff Alexis alleges that this employee was a relative of Defendant Shepherd. (*Id.*) More specifically, Plaintiff Alexis alleges that she was fired because she rated this employee's work as "Satisfactory" and because she issued the employee a "Letter of Admonition" for insubordinate conduct, taking overly long lunch breaks, and conducting personal business while at work. (*Id.*)

#### 1. Joint Claim for Wrongful Termination

■■■■ The plaintiffs offer absolutely no argument in support of the Joint Claim. In general, an at will employee in the District of Columbia may be discharged at any time and for any reason or for no reason at all. *See Adams v. George W. Cochran & Company,* 597 A.2d 28, 30

---

**14.** The court notes that the record contains no appraisals for Plaintiff Kinard for the evaluation years 1994–1995 or 1995–1996. The plaintiff has indicated, however, that management failed to provide written appraisals for those evaluation periods.

(D.C.App.1991). The D.C. Court of Appeals has held, however, that a very narrow public-policy exception to the at will doctrine exists in the District of Columbia. *See id.* at 34 (holding that the termination of an at will employee for refusal to violate a municipal regulation was unlawful as a matter of public policy); *see also Carl v. Children's Hosp.*, 702 A.2d 159 (D.C.1997) (holding that *Adams* did not foreclose the court from recognizing additional public policy exceptions where warranted, and finding a statutorily-based policy exception for employees speaking before the District Council). Undoubtedly, at will employees also may not be terminated for illegally discriminatory reasons, such as race or gender. *See Carl*, 702 A.2d at 162 n. 1. The plaintiffs' Joint Claim is grounded on neither of these legal foundations, and the court can glean no law requiring an employer to use "prudence, discretion, and good judgment" when terminating at will employees. Therefore, the Joint Claim fails to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Accordingly, the court grants the defendants' motion to dismiss the Joint Claim.

### 2. Plaintiff Alexis' Individual Claim for Wrongful Termination

Plaintiff Alexis, however, alleges that the public-policy exception to the at will doctrine applies to her termination. (Pls.' Opp'n to Mot. to Dismiss at 24–25.) Plaintiff Alexis finds the expression of relevant public policy on employee rights in the District Personnel Manual and certain provisions of the CMPA. (*Id.*) The cited CMPA provisions protect, *inter alia*, a District employee's right to speak out on public issues or to perform assigned duties

without fear of reprisal or retaliation. *See* D.C.Code Ann. §§ 1–616.1, 1–616.2 (1992). Plaintiff Alexis reasons that her discharge was improper, despite her at will status, because the supervisory actions she took were explicitly protected yet were a motivating factor in her termination.

The court finds it unnecessary to decide whether the plaintiff's actions as a supervisor should be protected as a matter of public policy. A review of the record reveals that Plaintiff Alexis has failed to demonstrate a causal relationship between her actions and her termination. The timing of the dismissal does not, in and of itself, suggest a nexus. The plaintiff issued the employee evaluation to her subordinate in April 1995, twenty-one months prior to her termination, and she wrote the letter of admonition four months later. (Pls.' Opp'n to Mot. to Dismiss Ex. 2.) The plaintiff makes no allegation that Defendant Shepherd engaged in any retaliatory conduct during the eighteen-month period between the issuance of the letter and her discharge.[15] Moreover, the plaintiff offers no evidence to suggest that Defendant Shepherd played any role in Defendant Williams's decision to terminate her. In short, the plaintiff offers no evidence from which this court can legitimately infer that her prior supervisory acts played any role in her termination. Therefore, Plaintiff Alexis's Individual Claim fails to state a claim upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6). Accordingly, the court grants the defendants' motion to dismiss the Individual Claim.

### G. Exhaustion of Administrative Remedies

The plaintiffs allege causes of action for defamation and intentional infliction of

---

15. In her affidavit the plaintiff states that Defendant Shepherd attempted to reassign her to the position of Supervisory Payroll Assistant in March 1996. (Pls.' Opp'n to Mot. to Dismiss, Ex. 2, Alexis Affidavit.) Two observations are in order. First, the court notes that the reassignment, which never occurred, would have changed neither plaintiff's supervisory status nor her grade level. (*Id.* at Ex. 2.) Second, and more importantly, the plaintiff concedes that Defendant Shepherd originally requested the plaintiff's reassignment in July 1994, nearly one year *before* Plaintiff Alexis evaluated Defendant Shepherd's alleged relative. (Pls.' Opp'n to Mot. to Dismiss, Ex. 2, Alexis Affidavit.) According to the plaintiff herself, the March 1996 reassignment request was made because the first one was never acted upon. (*Id.*)

emotional distress. (Pls.' Am. Compl. ¶¶ 89–93.) According to the plaintiffs, Defendant Williams made false statements to the press on the day of their termination that defamed them. (*Id.* ¶¶ 89–91.) Those statements amounted to extreme and outrageous conduct because Defendant Williams made them during the course of the plaintiffs' "abrupt" termination from employment. (*Id.* ¶ 93.)

Before reaching the merits of the plaintiffs' claims, the court must decide whether these common law tort actions are properly before it. The defendants assert that the plaintiffs should have exhausted their administrative remedies before raising these claims in District Court. (Defs.' Mot. to Dismiss at 21–23.) More specifically, the defendants characterize the plaintiffs' complaints as employment-related grievances covered by the employment-related dispute resolution provisions of the CMPA.[16]

The D.C. Court of Appeals has held that the CMPA is to be given broad scope over District Government employment issues. *See, e.g., District of Columbia v. Thompson*, 593 A.2d 621, 632–635 (D.C.1991). The *Thompson* court ruled that the CMPA provides District employees with their exclusive remedies for claims arising out of employer conduct in handling personnel ratings, employee grievances and adverse actions.[17] *See id.* at 635. The District Council, which designed the comprehensive merit personnel system, sought to "create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions—with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." *Id.* at 634.

Careful consideration of the case law delineating the reach of CMPA coverage leads this court to conclude that the plaintiffs' claims for defamation and intentional infliction of emotional distress arise out of an employment-related dispute. In *Thompson*, for example, the plaintiff, Patricia Thompson, alleged that a series of critical memoranda written by her supervisor were false, had defamed her and were intended to inflict emotional distress upon her. *See Thompson* at 625. Plaintiff Thompson also charged that her supervisor approved her leave requests but subsequently classified her as absent without leave and that he isolated her from other employees. *See id.* The *Thompson* court concluded that Plaintiff Thompson's tort claims arose out of disputes with her supervisor, that the supervisor's actions constituted personnel evaluation decisions and disciplinary actions, and therefore that her claims fell within the scope of the CMPA's coverage. *See id.* at 635. Accordingly, the court ruled that those claims should have been pursued administratively before they were brought in the D.C. Superior Court, where they had been litigated in the first instance.

Similarly, in *Stockard v. Moss*, the D.C. Court of Appeals held that the plaintiff's defamation claim against her supervisor was employment-based and was therefore covered by the CMPA. *See Stockard v. Moss*, 706 A.2d 561 (D.C.1997). The plaintiff, Bessie Stockard, a university basketball coach, was told by the school's athletic director, Ozby Moss, that there were certain discrepancies in her financial record-keeping for team trips. *See id.* at 563. When the plaintiff denied involvement in any fiscal impropriety, she was orally informed that her coaching contract, which was set to expire within a few months, would not be renewed. *See id.* Both before and after Plaintiff Stockard's discharge, Defendant Moss told members of the basketball team that the plaintiff had

---

**16.** These provisions, unlike the pre-termination process provisions discussed *supra*, survived the passage of section 152.

**17.** A grievance is broadly defined as "any matter under the control of the District Government which impairs or adversely affects the interest, concern, or welfare of employees." D.C.Code Ann. § 1–603.1.

been fired for misappropriation of funds. *See id.* The *Stockard* court held that the defendant's oral statements to the team explaining the reasons for the plaintiff's termination constituted a personnel evaluation decision within the contemplation of the CMPA's grievance provisions. *See id.* at 565. Importantly, the court held that the contested statements did not lose their character as a performance evaluation when they were directed to others with a direct interest in Plaintiff Stockard's removal. *See id.*

▮ Applying the reasoning of *Thompson* and *Stockard* to the instant matter, the court concludes that Defendant Williams's allegedly defamatory statements to the press arose out of his conduct in handling personnel evaluation decisions. Much like the athletic director in *Stockard,* Defendant Williams offered his statements, negatively characterizing the plaintiffs' job performance, to the public to explain his decision to terminate their employment. The public held a direct interest in being informed of such a large-scale District government personnel action. Thus, the court views the present dispute arising from Defendant Williams's press conference to be a personnel issue falling within the reach of the CMPA's grievance provisions. In consequence, the court holds that the plaintiffs must first pursue these tort claims administratively before raising them in this judicial forum. Accordingly, the court grants the defendants' motion to dismiss for lack of subject matter jurisdiction.

## H. Plaintiffs' Motion for Partial Summary Judgment

In the "Conclusion" section of their Opposition brief, the plaintiffs request that the court treat their Opposition as a motion for partial summary judgment and "grant them summary judgment on the legal issues discussed herein." (Pls.' Opp'n to Mot. to Dismiss at 35.) Given the foregoing analysis of the plaintiffs' claims, the court concludes that they are not enti-

tled to summary judgment on any of the legal issues considered. Accordingly, the court denies the plaintiffs' motion for partial summary judgment.

## V. CONCLUSION

For the aforementioned reasons, the court grants the defendants' motion to dismiss the plaintiffs' Fifth Amendment property interest claim, the plaintiffs' claim challenging the constitutionality of section 152 of the 1996 Appropriations Act, Plaintiff Kinard's First Amendment claim, the plaintiffs' wrongful termination claim, and the plaintiffs' defamation and intentional infliction of emotional distress claims.

The court grants in part and denies in part the defendants' motion to dismiss and the defendants' motion for summary judgment on the plaintiffs' Fifth Amendment liberty interest claim. Specifically, the court denies the defendants' motion for summary judgment on the plaintiffs' "reputation-plus" claims. The court grants the defendants' motion for summary judgment on the plaintiffs' "formal exclusion" claim. The court grants the defendants' motion for summary judgment on the "broad foreclosure" claims of Plaintiffs Mills, Hmaey, Brannic and Timikate. The court denies the defendants' motion for summary judgment on the "broad foreclosure" claims of Plaintiffs Alexis, Graham, James and Kinard. The court grants the defendants' motion to dismiss Plaintiff Thomas from this action on the basis of *res judicata.* The court grants the defendants' motion to dismiss Plaintiff Mills' Fifth Amendment property interest claim on the basis of failure to exhaust administrative remedies.