**Bessie A. STOCKARD, Appellant,**

v.

**Orby Z. MOSS, Jr., et al., Appellees.**

No. 94–CV–143.

District of Columbia Court of Appeals.

Argued March 25, 1997.
Decided Sept. 4, 1997.

John M. Clifford, with whom Christine M. Cooper, Washington, DC, was on the brief, for appellant.

Donna M. Murasky, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellees.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This appeal represents yet another chapter in an action which has been within this court system in excess of fifteen years. In March of 1982, appellant Bessie Stockard initiated the instant suit for, *inter alia*, the tort of slander against the District of Columbia, the Board of Trustees of the University of the District of Columbia ("UDC") and Orby Z. Moss, Stockard's immediate supervisor. The alleged slander arose from oral accusations made by Moss that Stockard had misappropriated funds during her tenure as head coach of UDC's women's basketball team. A jury awarded Stockard $300,000 on the slander claim, which was later reduced by remittitur to $100,000.

On appeal in 1990, we upheld the remittitur, but remanded the case for a determination whether an absolute immunity protected Moss from liability for defamatory statements. *Moss v. Stockard,* 580 A.2d 1011 (D.C.1990) (*"Stockard I"*). However, on remand, the trial court dismissed the claim in March of 1993 for lack of subject matter jurisdiction, relying on our subsequent decision in *District of Columbia v. Thompson,* 593 A.2d 621 (D.C.1991) (*"Thompson II"*).[1] As in that case, the trial court here concluded that the claim fell within the scope of the Comprehensive Merit Personnel Act ("CMPA" or "the Act"), requiring a first resort to its grievance procedures. This appeal is taken from that dismissal. We affirm.

## I. The Background

### A. Facts

We summarize here the relevant facts, which are laid out in greater detail in *Stockard I.*

In 1978, Bessie Stockard was a tenured associate professor in the Physical Education Department of UDC. In April of 1979 Moss, Director of Athletics, offered to appoint Stockard head coach of the new women's basketball team at UDC, and Stockard accepted. The contract term was for one year[2] beginning June 1, 1979, renewable at Moss's discretion. In 1980 Moss offered to renew Stockard's contract for a second year. In deference to Stockard's desire to resume her former status as a full-time tenured professor of physical education, Moss offered the coaching position on a part-time basis, and Stockard accepted.

At the end of Stockard's second season, Moss orally informed her that her contract would not be renewed. The termination resulted from Moss's dissatisfaction with her handling of and accounting for university funds disbursed to cover meal and other expenses during a three-day team trip to Atlanta for two "away" games in December 1980. On March 25, 1981, Moss confronted Stockard and told her that she was either misrepresenting her trip reports or giving her players too much money. When Stockard refused to change her position, Moss told her that her contract would not be renewed.

Following Stockard's March 25 meeting with Moss, she informed her assistant coach, Steven Haynes, that she had been fired. The news spread quickly through the university community, and members of the team came to Stockard to ask her the reason why. She told them to "[g]o ask Mr. Moss." On March 25, Theresa Snead and Alice Butler, co-captains of the team, went to Moss for an explanation of the reasons for Stockard's discharge. Snead testified that Moss told them Stockard had been fired for "misappropriation of funds." Shortly after Stockard was discharged, a team meeting was held which Moss attended. According to team member Louise Spriggs, Moss stated that "they had decided to let [Stockard] go because it was a misappropriation of funds."

### B. Procedure

Stockard initiated her suit in March 1982, naming as defendants Moss, Emma Best,[3]

---

1. *Thompson II* was decided on a petition for rehearing and substantially modified the prior decision of *District of Columbia v. Thompson,* 570 A.2d 277 (D.C.1990) (*"Thompson I"*).

2. Due to budgetary constraints affecting university athletic programs, internal university rules prohibited multi-year appointments for coaches.

3. All of Stockard's claims against Best, then assistant director of women's athletics, were dismissed. This action is not before us.

the Board of Trustees of UDC, and the District. The complaint sought compensatory and punitive damages, alleging breach of contract, libel and slander, tortious interference with contract, intentional infliction of emotional distress, and sex discrimination.[4] All but the slander and breach of contract claims were dismissed, either by summary judgment or directed verdict. On May 6, 1986, the jury returned a verdict in Stockard's favor, awarding her $18,000 for breach of contract and $300,000 for slander. The trial court reduced the latter award to $100,000.

On appeal, we reversed outright the award of damages for breach of contract, and remanded the defamation claim to the trial court for a determination of whether the slander was shielded by an absolute privilege. *Stockard I, supra,* 580 A.2d at 1013.

However, soon after we decided *Stockard I,* we held in *Thompson II* that the CMPA, which set up comprehensive administrative procedures for resolving the grievances of District employees, was intended to provide employees with their exclusive remedies for claims arising out of employer conduct in handling personnel ratings, employee grievances and adverse actions. 593 A.2d at 635. As a consequence, the Act precluded litigation of such claims, in the first instance, in Superior Court. *Id.*

Therefore, upon remand, appellees moved the trial court to dismiss for lack of subject matter jurisdiction. The trial court granted these motions, finding that Stockard's defamation action was indistinguishable from the action preempted by the CMPA in *Thompson II.* Stockard appeals from those orders.[5]

Appellant presents two arguments on appeal. First, she contends that her defamation claim was not a "personnel issue" for which the CMPA provides an exclusive remedy, and therefore is not preempted by the Act. Second, she argues that even if her defamation claim falls within the ambit of the CMPA, the trial court nonetheless had jurisdiction over that claim because it was "fundamentally related" to her claim for sexual discrimination, *see* note 4, *supra,* for which there is no remedy under the CMPA. We address each in turn.

## II. CMPA Exclusivity

■ The CMPA establishes a merit personnel system that, among other things, provides for (1) employee "performance ratings," including "corrective actions" when necessary; (2) employee discipline through "adverse action" proceedings; and (3) prompt handling of employee "grievances." *See* D.C.Code §§ 1–615.1 to –615.5 and 1–617.1 to –617.3 (1992).[6] As a general rule, whether a public employee defends a corrective or adverse action by the employer, or initiates a grievance proceeding against the employer, the matter will be resolved either under detailed CMPA procedures or under a CMPA-sanctioned collective bargaining agreement. *Thompson II, supra,* 593 A.2d at 625.

4. The sex discrimination claim was also pursued in the District of Columbia Office of Human Rights. Pursuant to a settlement agreement entered on October 4, 1982, UDC agreed to reinstate Stockard as the women's basketball coach with back pay, and Stockard agreed to withdraw her human rights claim. Stockard apparently abandoned the sex discrimination count for purposes of trial. It was not mentioned in her pretrial statement, and no jury instructions were issued concerning the claim. *Stockard I, supra,* 580 A.2d at 1017 n. 10.

5. The trial court granted the District's and UDC's motion to dismiss on March 22, 1993, and Moss' motion on April 6, 1993. Stockard's notice of appeal designates only the March order, and appellees argue that she has therefore failed to preserve her right to appeal the dismissal of her claim against Moss. Here, however, as in *Moradi v. Protas, Kay, Spivok, & Protas, Chartered,* 494

A.2d 1329, 1332 n. 6 (D.C.1985), "luckily for appellant" the trial court in the operative portion of the order outright dismissed the complaint with prejudice. Thus, the April order was superfluous and Stockard has preserved her right to appeal as to each defendant. This likewise disposes of the District's argument based upon "collateral estoppel" due to the failure to appeal.

6. The CMPA delegates significant authority to the UDC to develop its own policies regarding "classification, appointment, promotion, retention, and tenure" of its "educational employees," D.C.Code § 1–602.3(b), and such employees are excluded from subchapter XV's performance ratings plan. *Id.* The University's performance evaluation regulations are detailed at 8 D.C.M.R. §§ 1130 and 1422–1435 (1988). All other employees are covered by subchapter XV's performance ratings provisions.

In *Thompson II* we noted, after reviewing the purpose and text of the CMPA, that the Council of the District of Columbia intended the Act to "address[ ] virtually every conceivable personnel issue among the District, its employees, and their unions— with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." 593 A.2d at 634. We concluded that "the Council intended CMPA to provide District employees with their exclusive remedies for claims arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions." *Id.* at 635. The CMPA therefore implicitly preempts claims of wrongful treatment and injury cognizable as a "personnel issue" under the Act's "performance ratings," "adverse actions," and "employee grievances" provisions. *King v. Kidd*, 640 A.2d 656, 663 (D.C.1993).

In *Thompson II*, Thompson, a former District employee, brought suit against the District and Alfred Maury, her supervisor, arising from an altercation between herself and Maury. The confrontation, which began with an exchange of angry words regarding the propriety of Thompson's allegedly excessive leave-taking, escalated to pushing and shoving. Following the incident, Maury discussed his side of the story with Sigrid Washington and June Sweeney, his superiors. He also wrote a memorandum to Washington describing the incident and recommending that Thompson be dismissed. A month after the incident, Thompson received a performance evaluation which rated her unsatisfactory. After her termination, Thompson filed a complaint in Superior Court alleging that Maury's actions constituted assault and battery, and that his subsequent statements describing the incident were defamatory. She further alleged that his actions constituted intentional infliction of emotional distress. A jury awarded Thompson damages on each claim. We reversed on appeal, holding that Thompson's tort claims of defamation and intentional infliction of emotional distress arose out of disputes with her supervisor "that clearly fall within the scope of CMPA §§ 1–615.1 to –615.5 and §§ 1–617.1 to –617.3." [7] 593 A.2d at 635. We concluded that the supervisor's actions constituted personnel evaluation decisions and disciplinary actions fitting squarely within the text and purpose of the CMPA's administrative review and grievance procedures. As a result, Thompson was precluded from litigating those claims in Superior Court.

Here, Moss' statements, like Maury's, fell within the ambit of the CMPA. The defamatory remarks clearly arose out of Moss' conduct in handling personnel evaluation decisions and disciplinary actions as contemplated by the CMPA. His statements regarding Stockard's deficient job performance were offered in explanation of why her status as basketball coach was being terminated through nonrenewal of her contract, in a sense an adverse action.[8] We see no meaningful distinctions between the defamation in *Thompson II* and that in this case. We see little of consequence to the fact that Moss' statements were oral, while Maury's statements were both oral and written. Nor does the fact that Moss' statements were directed to others with a direct interest in the event remove them from the realm of "performance evaluation." In *Thompson II*, we found remarks made outside the formal process sufficient to constitute a personnel evaluation decision. The dispute regarding Moss' statements in any realistic sense clearly related to a "personnel issue" as contemplated by the Act and was cognizable by the applicable grievance procedures.[9]

---

7. The District conceded that Thompson's assault and battery claims were not properly characterized as actions covered by CMPA subchapters 15 and 17. and were thus properly brought as independent tort actions. *Thompson II, supra,* 593 A.2d at 624 n. 2.

8. An adverse action is for "cause" if it results from, *inter alia,* an employee's "misuse ... of District property, records, or funds." D.C.Code § 1–617.1(d).

9. This is not to say that all defamation actions necessarily fall within the grievance provisions of the CMPA. As already noted in footnote 7, in *Thompson II* the District conceded that the assault and battery count could be brought directly against it. We have no occasion here to examine with particularity the range or factual settings of common-law torts which may be brought against the District by its employees quite apart from the exclusivity provisions of the CMPA.

The Act defines a "grievance" broadly as encompassing "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees." D.C.Code § 1–603.1(10). The Act directs the Trustees of the University to issue rules and regulations providing procedures for the prompt handling of employee grievances. D.C.Code § 1–617.2(a). Stockard argues for the first time in her reply brief that she would have been unable to bring her grievance under the applicable University regulations. It is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief. *District of Columbia v. Patterson*, 667 A.2d 1338, 1346 n. 18 (D.C.1995); *Bingham v. Goldberg, Marchesano, Kohlman*, 637 A.2d 81, 95 n. 34 (D.C.1994). However, the argument appears to lack merit in any event.

UDC's grievance procedures are set forth in detail in chapter 16 of Title 8 of the D.C. Municipal Regulations, and provide in the introductory paragraph that they "shall be utilized by all University employees for the resolution of conflict, the prompt and equitable relief of personal concerns, and the redress of grievances." 8 DCMR § 1600.1 (1988). Certain categories of grievances are specifically excluded from the procedures, such as complaints of discrimination covered under the Human Rights regulations. § 1600.2. Stockard does not contend that her grievance would be barred as falling into any of these enumerated categories. Instead, her argument centers upon § 1600.3, which provides that

"[a] grievance *may* consist of a complaint of dissatisfaction or dispute concerning the following:

(a) The interpretation or application of University policies or procedures;

(b) A claimed violation, misrepresentation, or misapplication of University rules or applicable law; or

(c) A failure to act pursuant to the policies and practices of the University or other applicable policies and practices."

8 DCMR § 1600.3 (1988) (emphasis added).

We need not decide the question of whether Stockard's defamation claim fits squarely within § 1600.3 because we read this section as an illustrative but not exhaustive list of grievable complaints. The word "may" is permissive rather than mandatory. The opening provision of the University's grievance regulations, quoted above, is itself expansive in stating the intended coverage. § 1600.1. Moreover, the broad scope of grievable complaints as defined in the statute, *see* D.C.Code § 1–603.1(10), and the intention that the Act "address virtually every conceivable personnel issue," *Thompson II, supra*, 593 A.2d at 634, militate in favor of this reading. Consequently, we conclude that Stockard would have been entitled to initiate grievance proceedings under the CMPA.[10]

As we noted in *Thompson II*, the remedies available under the CMPA are substantial and may, in some respects, afford more complete relief than the damage remedies available at common law. 593 A.2d at 635. D.C.Code § 1–617.2(a) requires that the grievance system "provide for the expeditious adjustment of grievances and complaints and the prompt taking of appropriate corrective action when the complaint or grievance is, upon review, found to be justified." Also, the CMPA defines the Office of Employee Appeals' power to grant relief broadly, permitting it to "uphold, reverse, or modify the decision of the agency" and to take "corrective or remedial action." D.C.Code §§ 1–606.3(b), –617.3(b). Furthermore, the CMPA does not require an employee to overcome the qualified immunity of

---

10. Appellant also cites § 1620.1, which provides that faculty members "who allege that there exists a breach, violation, misapplication of, or failure to act pursuant to the policies and practices of the University or other applicable policies and practices may file a grievance using the procedures set forth in §§ 1620 through 1624." Stockard argues that she could not invoke these procedures because Moss violated no University or other "policies" or "practices." However, it

appears that Stockard in any event could have invoked the grievance procedures in §§ 1603 through 1605, which are available to all University employees. Section 1600.2(i) of the regulations, also cited by Stockard, states that the University's grievance procedures are inapplicable with regard to any matter "which is not subject to the jurisdiction of the Board of Trustees." Appellant makes no argument that her grievance would fall outside of the Board's jurisdiction.

government officials as would be required in a common law damage action, and CMPA procedures may be speedier and less costly than litigation. *Thompson II, supra,* 593 A.2d at 635 (citing *Bush v. Lucas,* 462 U.S. 367, 391, 103 S.Ct. 2404, 2418, 76 L.Ed.2d 648 (1983) (Marshall, J., concurring)).

In sum, we conclude that the trial court correctly ruled that the CMPA provides the exclusive remedy for claims falling within its ambit and compels Stockard to pursue her grievance in accordance with the procedures set forth in the Act.[11]

### III. Link to Discrimination Claim

Appellant contends for the first time on appeal that her defamation claim, even if falling within the purview of the CMPA, was nonetheless so closely related to her discrimination claim that jurisdiction was proper. She invokes our holdings that the Superior Court may properly hear those common law tort claims otherwise grievable only pursuant to the Act if they are "fundamentally linked" to discrimination claims, which are not grievable under the CMPA.[12] *King v. Kidd, supra,* 640 A.2d at 663–64. *See also Estate of Underwood v. National Credit Union Administration,* 665 A.2d 621, 635–36 (D.C.1995); *Webb v. Hyman,* 861 F.Supp. 1094, 1100–02 (D.D.C.1994). In *Kidd,* we sustained the court's jurisdiction to hear both plaintiff's sex discrimination claim and her "pendent"[13] tort claim for intentional infliction of emotional distress because the latter was essentially premised upon the former; plaintiff had alleged that her emotional distress arose from the sexual harassment and retaliation by the defendants. 640 A.2d at 664.

It is axiomatic that appellate courts normally will not consider points not presented to the trial court. *Little v. United States,* 665 A.2d 977, 980 (D.C.1995) ("Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal") (citing *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967)). It is equally axiomatic in our jurisdiction that trial court rulings come with a presumption of correctness and that it is the responsibility of the appellant to furnish an appellate record evidencing the claimed trial court error. *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982).

Stockard has failed to include her complaint in the record on this appeal. We gather from the briefs that the sex discrimination claim was based upon allegations that Stockard's male counterparts in the athletic department who were accused of misappropriation were not discharged, but rather were allowed to reimburse the school. However, it is not at all apparent from these descriptions that this claim was "fundamentally related" to the defamation count in the manner found in *Kidd.* Indeed, it was unnecessary for Stockard to prove any facts tending to show that her male counterparts were treated more favorably in order to prevail upon her defamation claim at trial.

Thus, even if we were to reach the merits of the belatedly raised argument, we would be "unable to make a meaningful determination whether her common law claims fall under the rubric of those preserved by *Kidd* or those extinguished by *Thompson.*" *Roache v. District of Columbia,* 654 A.2d

11. In so ruling, we express no opinion about whether Stockard is, or is not, time barred from pursuing these claims administratively.

12. District employees complaining of discrimination must file their claims pursuant to procedures established under a different statutory scheme, the District of Columbia Human Rights Act, D.C.Code §§ 1–2501 to –2557 (1992). *King v. Kidd, supra,* 640 A.2d at 663 n. 9.

13. *Kidd* and subsequent opinions have characterized the plaintiff's common law claim accompanying her discrimination claim as "pendent," much like the federal practice of exercising juris-

diction over state law claims pendent to federal claims if "derived from a common nucleus of operative fact," *see United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *Kidd, supra,* 640 A.2d at 664 n. 11; *Estate of Underwood, supra,* 665 A.2d at 636 n. 24. Federal jurisdiction is now governed by 28 U.S.C. § 1367. Under that statute, a district court may decline to exercise pendent jurisdiction if, *inter alia,* all the claims over which it has original jurisdiction have been dismissed, or if the pendent claim "substantially predominates." 28 U.S.C. § 1367(c)(2),(3) (1994).

1283, 1284 (D.C.1995). There is simply nothing in the record before us upon which to base a conclusion that the defamation and discrimination claims were "fundamentally linked" in a manner warranting the bypass of the administrative grievance procedure. *See Cobb, supra,* 453 A.2d at 111.

*Affirmed.*

WAGNER, Chief Judge, dissenting:

I cannot agree that the Comprehensive Merit Personnel Act (CMPA)[1] preempted the jurisdiction of the Superior Court over Stockard's tort claim for slander. The CMPA does not preempt all common law tort claims that an employee has against the District, but provides the exclusive remedy for only those "arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions." *District of Columbia v. Thompson,* 593 A.2d 621, 635 *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991) (*Thompson II* ); *King v. Kidd,* 640 A.2d 656, 663 (D.C.1993). Stockard's claim for slander does not appear to fall within that category.

Stockard, a tenured professor, had a separate contract for coaching services which the University of the District of Columbia (UDC) refused to renew. *Moss v. Stockard,* 580 A.2d 1011, 1014 (D.C.1990). Stockard claimed that after UDC refused to renew her coaching contract, its athletic director, Orby Moss, falsely told basketball team members and other university employees that the reason for the non-renewal was her misappropriation of funds. *Id.* at 1016–17, 1022. The CMPA preempts common law action only if the alleged wrongful treatment is cognizable as a "personnel issue." *Id.* Stockard is not claiming an injury or damages cognizable as a personnel issue under the CMPA. *See King, supra,* 640 A.2d at 663. Rather, Stockard claims injury to her reputation due to the tortious conduct of a university employee for which the CMPA does not afford relief. Thus, her slander action is more like an assault and battery claim which has been

recognized as falling outside the coverage of the CMPA, even though the tortious conduct occurred in the workplace, and therefore within the jurisdiction of the court. *Id.* at 663 (citing *Thompson II, supra,* 593 A.2d at 624 n. 2, 635).

Contrary to the majority, in my view, there is a meaningful distinction between Moss' slanderous remarks in this case and the defamatory remarks found to preclude an action in the Superior Court against the District in *Thompson II, supra.* In *Thompson II,* the plaintiff sued her employer, the District, and her supervisor for defamation and intentional infliction of emotional distress. These claims were based on statements the supervisor made in twenty-two memoranda which "repeatedly advised and warned [Thompson] to follow the correct leave request procedures and notified her of problems in the performance of her duties.…" *Thompson II, supra,* 593 A.2d at 625 (quoting *District of Columbia v. Thompson,* 570 A.2d 277, 281 (D.C.1990) (*Thompson I* )). Thompson claimed that statements in the memoranda were false. *Id.* This court characterized the memoranda as "letters of warning," "written reprimands," or "corrective actions" within the meaning of the union collective bargaining agreement or within the CMPA. *Id.* at 627. This court also found that some of the memoranda appeared to be directed toward discipline under the CMPA. *Id.* Thus, all of the alleged statements were found to be tied to provisions of documents governing the employees rights and responsibilities under the CMPA or a CMPA-sanctioned union contract.[2] *Id.* In contrast, Moss' allegedly false post-contract statements were made to persons with no claimed connection to any disciplinary process and unconnected with any contemplated or pending adverse action. The slanderous remarks cannot be said to fall clearly within the scope of CMPA so as to preempt the Superior Court's jurisdiction to entertain Stockard's slander claim. Moss' statements cannot be fairly said to have been made for the purpose of warning, reprimand-

---

**1.** D.C.Code §§ 1–601.1—1–637.2 (1992).

**2.** In *Thompson II,* the District conceded that Thompson's assault and battery claims were not

actions covered by the CMPA, and therefore brought properly as an independent tort claim. 593 A.2d at 24 n. 2.

ing, or taking adverse action against Stockard. For these reasons, I respectfully dissent from the opinion of the court.

