Irving ROBINSON, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 98–CV–1677.

District of Columbia Court of Appeals.

Argued Dec. 16, 1999.
Decided March 30, 2000.

Edward J. Elder, with whom James R. Klimaski, Washington, DC, was on the brief, for appellant.

Donna M. Murasky, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel Appellate Division were on the brief, for appellee.

Before STEADMAN, RUIZ and WASHINGTON, Associate Judges.

STEADMAN, Associate Judge:

Appellant Robinson, an employee of the District of Columbia government, seeks to sue the District for certain work-related common-law torts. In general, redress for such torts must be sought exclusively through the provisions of the District's Comprehensive Merit Personnel Act (CMPA). D.C.Code §§ 1–601.1 *et seq.* (1999). Appellant argues that his claims are related to claims of sexual harassment and thus fall within the exception to this rule. We disagree and accordingly affirm the decision of the trial court dismissing appellant's claims for want of jurisdiction.

## I.

Appellant's complaint contained the following factual allegations. On November 15, 1995, appellant, an employee of the D.C. Department of Corrections (DOC), filed an internal complaint against his co-worker Charlene Smith, alleging sexual harassment. Apparently in retaliation, similar complaints were filed by Smith against Robinson in turn. In addition, Smith filed a criminal complaint against appellant in Prince George's County, Maryland. In direct response to the criminal charges filed against Robinson, his superiors transferred him from the DOC facility in Southeast Washington to the Lorton, Virginia, facility on November 29, 1995. An internal memo, detailing the charges against him and the reasons for his transfer, mistakenly received wide circulation at the Lorton facility. By January 1996, Robinson had been fully exonerated of any wrongdoing by the DOC. The Operations Commander at the DOC and an independent fact-finding committee found Smith's charges against appellant meritless and recommended Robinson's immediate return to the Southeast Washington facility.[1] Appellant was not transferred back to his original post, however, until May 1996. In August 1996, the criminal charges against Robinson were officially dropped when the Maryland State Attorney *nolle prosequied* the claim.

On November 28, 1996 appellant sued the District of Columbia, the Director of the DOC, the Executive Director of the

1. The same committee also found probable cause to believe Robinson's claims against Smith, and recommended that she be disciplined and charged.

DOC, the Deputy Director for Operations at the DOC, and the Deputy Director for Institutions at the DOC, as well as Smith.[2] The complaint alleged defamation, publication of private facts, false light, negligence, and intentional infliction of emotional distress.[3] The claims stemmed from Smith's false reports, DOC's improper publication of confidential documents, and the Department's failure to promptly act on the recommendations of its own fact-finding committee and officers. In the complaint, Robinson did not seek any direct relief for sexual harassment or discrimination from any of the defendants, including Smith.

Prior to trial on September 16, 1998, the trial court granted a renewed motion to dismiss as to the District. The court ruled that appellant's claims against the District were governed exclusively by the District's Comprehensive Merit Personnel Act, and thus had to be dismissed for want of jurisdiction. The case proceeded to a bench trial against Smith alone, and appellant was awarded $11,762.54 in damages. Appellant now appeals the dismissal of his claims against the District.

## II.

With few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind. *Stockard v. Moss,* 706 A.2d 561, 564 (D.C.1997). The Superior Court is not an "alternative forum" in this scheme, but rather serves as a "last resort" for reviewing decisions generated by CMPA procedures.[4] *Id.* at 565 (quoting *District of Columbia v. Thompson,* 593 A.2d 621, 634 (D.C.1991)). We have noted several times the sweeping na-

ture of this exemption as encompassing nearly all employee claims arising out of workplace activity. *See, e.g., King v. Kidd,* 640 A.2d 656, 663 (D.C.1993); *Thompson, supra,* 593 A.2d at 634.

"Nonetheless, it remains the case that government employees only lose common law rights of recovery if the statute provides redress for the wrongs they assert." *Newman v. District of Columbia,* 518 A.2d 698, 704–05 (D.C.1986). In this regard, the regulations pertaining to the CMPA expressly exclude from the employee grievance procedures any allegations within the jurisdiction of the D.C. Office of Human Rights. *Kidd, supra,* 640 A.2d at 664 (citing D.C. Personnel Regulations § 1632.1(o), 34 DCMR 1845, 1878 (1987)). As a result, an employee seeking relief for discrimination must pursue the remedies provided under the District of Columbia Human Rights Act rather than the CMPA. *Stockard, supra,* 706 A.2d at 567 n. 12; *Kidd, supra,* 640 A.2d at 663 n. 9. *See also Williams v. District of Columbia,* 467 A.2d 140 (1983).

We built on this concept in *Kidd* to fashion a narrow exception to the exclusivity provision of the CMPA for common-law claims that were "premised on, and fundamentally related to" a sexual harassment claim:

"[P]ublic employees do not lose their common law rights to sue for the[ir] injuries ... [when] neither those injuries nor their consequences trigger" the exclusive provisions of the CMPA. *Newman,* [*supra,*] 518 A.2d at 705. Because there is no evidence that the Council of the District of Columbia in-

---

**2.** Appellant subsequently dismissed all the defendants with the exception of the District and Smith.

**3.** Appellant also sued for malicious prosecution, for which Smith was the only named defendant.

**4.** For this reason, appellant's argument that CMPA's "exhaustion" requirement should be set aside due to the slowness of administrative

proceedings is misplaced. The statute is jurisdictional and provides the exclusive remedy for almost all claims against public employers, with an opportunity to appeal to the Superior Court. *King v. Kidd,* 640 A.2d 656, 663 (D.C.1993) (citing *Thompson, supra,* 593 A.2d at 635). Equity does not afford this court the authority to deviate from that clear legislative prescription.

tended to divest the Superior Court of its preexisting jurisdiction to hear intentional infliction of emotional distress claims arising out of allegations of government workplace sexual harassment and subsequent retaliation, ... the Superior Court had jurisdiction to hear both Kidd's sexual harassment claim and her interrelated or "pendent" tort claim.

*Kidd,* 640 A.2d at 664 (footnotes omitted). This authority for civil courts in the District to hear common law tort claims along with the discrimination claims of public employees under the *Kidd* exception mirrors federal courts' exercise of "pendent" jurisdiction over state claims. *Stockard, supra,* 706 A.2d at 567 & n. 13; *Kidd, supra,* 640 A.2d at 664. Thus, where a "tort claim for intentional infliction of emotional distress ... [is] essentially premised upon [a claim of sex discrimination]," a trial court has jurisdiction to hear both claims—both the primary discrimination claim and the "pendent" tort claim. *Stockard, supra,* 706 A.2d at 567 (explaining *Kidd, supra,* 640 A.2d at 664).

■ Appellant here seeks to bring his action within this *Kidd* exception. We agree with the trial court that it is inapplicable to the present case. In *Kidd,* the harassment claim against the co-employee formed a necessary postulate for the tort claim against the supervisors to survive— to wit, "sexual harassment" was the "foundation" for the claim of emotional distress. *Kidd,* 640 A.2d at 664. The plaintiff, Kidd, had alleged that her supervisor "colluded with [Kidd's co-employee] in responding to her grievance against [the co-employee] ... and that [the supervisor] participated in retaliating against Kidd—after she had filed a formal sexual harassment complaint with the Office of Human Rights." *Id.* Thus, the successful prosecution of the claim of intentional infliction of emotional distress against the supervisor necessarily required proof of the underlying claim of

sexual harassment in which he was alleged to have "colluded." [5] Because the proof or disproof of that foundational claim was not preempted by the CMPA, neither was the tort claim which flowed from the harassment.

The situation as presented by appellant's complaint is fundamentally different. As the trial court noted, it contains no claim of sexual harassment or discrimination as such. Rather, the relief that appellant seeks is based on his grievances with the District's handling of the sexual harassment allegations and the publicity given to them. Thus there is no primary claim of sexual harassment to which his claims could even arguably be deemed pendent.

■ Furthermore, appellant's claims cannot be characterized as "premised on and fundamentally related to" any underlying allegation of sexual harassment, within the meaning of *Kidd.* In *Kidd,* proof of the claim of intentional infliction of emotional distress, held pendent to the sexual harassment claim, depended upon proof of sexual harassment. By comparison, in *Stockard,* 706 A.2d at 567, we questioned the existence of proper subject matter jurisdiction over the plaintiff's defamation claim, allegedly based on a *Kidd* theory, since "it was unnecessary for Stockard to prove any fact tending to show that her male counterparts were treated more favorably in order to prevail upon her defamation claim at trial," and thus the "fundamental link" between the harassment and the tort was seriously in question. While it is true that in a broad sense the claims in the case now before us were the sequelae of alleged sexual harassment, we do not think that fact alone can vest them with a "fundamental link" to that harassment sufficient to warrant the application of the *Kidd* excep-

**5.** Notably, the jury found the co-employee in *Kidd* liable for sexual harassment. *Kidd, su-* *pra,* 640 A.2d at 658.

tion.[6] *See, e.g., Thompson, supra,* 593 A.2d at 635 (holding tort claims of defamation and intentional infliction of emotional distress, based in large part on memoranda circulated by the plaintiff's supervisor, "clearly f[e]ll within the scope of the CMPA[,]" despite the fact that allegations of assault and battery against supervisor were outside the scope of the CMPA). The mere presence of some aspects of sexual harassment or discrimination in the factual background of a particular tort claim is simply not enough to trigger the *Kidd* exception. Rather, assertions of sexual harassment must, in effect, be part and parcel of the claimed tort itself.

Accordingly, the order of the trial court dismissing the complaint against the District for want of jurisdiction is

*Affirmed.*

---

6. An examination of the claims make clear that plaintiff's common law tort claims would succeed or fail irrespective of whether Smith's actions constituted sexual harassment. For example, had Smith's actions not risen to that level, the District may still have violated a duty of care by allowing the memoranda detailing the charges against Robinson to circulate at the Lorton facility.