Chester W. WHITE, Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

No. 02–CV–59.

District of Columbia Court of Appeals.

Argued Feb. 19, 2004.
Decided June 10, 2004.

Johnny M. Howard, Washington, DC, for appellant.

Michael F. Wasserman, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellees.*

Before WAGNER, Chief Judge, and SCHWELB and REID, Associate Judges.

SCHWELB, Associate Judge:

In this action for fraudulent misrepresentation brought in the Superior Court by Chester W. White against the District of Columbia and Angela Avant, the District's former Inspector General, the jury returned a verdict in favor of the defendants, and the trial court entered judgment on the verdict. On appeal, White challenges certain evidentiary and other rulings by the trial judge, and he also asserts that the judge erroneously instructed the jury. We do not reach White's substantive claims, for we conclude that the trial court was without subject matter jurisdiction over White's action. Accordingly, we vacate the judgment and remand the case with directions to dismiss White's suit for lack of jurisdiction.

---

* At the time the appellees' brief was filed, the titles of Mr. Wasserman, Mr. Spagnoletti, and Mr. Schwab were Assistant Corporation Counsel, Acting Corporation Counsel, and Acting Deputy Corporation Counsel respectively.

## I.

In 1996, Mr. White, who was fifty-seven years of age, retired from the federal government to take a position with the District of Columbia's Office of Inspector General, then headed by Ms. Avant, at an annual salary of $91,000. On the basis of his age and prior service, he was entitled to a federal pension of $60,000 per year.[1] White hoped, and apparently expected, to receive both his federal annuity and his District of Columbia salary, for a total of $151,000 per year. Federal law directed at "double-dipping" provides that "[i]f an annuitant ... becomes employed in an appointive or elective position ... [a]n amount equal to the annuity allocable to the period of actual employment shall be deducted from his pay." 5 U.S.C. § 8344(a); *see also* 5 C.F.R. § 837.303(a).[2]

The gravamen of White's claim in the present suit, which was filed on August 29, 1997, is that Ms. Avant falsely represented to him, before he accepted the position in her office, that she had obtained a waiver from the federal government of the provision requiring an offset or deduction. White alleged that he had relied on Ms. Avant's representation when he agreed to take the job. White requested an award of compensatory and punitive damages.[3]

White's action originally came before Superior Court Judge Ann O. Keary. On December 12, 1997, the judge stayed the action to permit White to pursue an administrative remedy pursuant to the Comprehensive Merit Personnel Act (CMPA).[4] On December 31, 1997, White filed an "appeal" with the Office of Employee Appeals (OEA). At the time White did so, however, there had been no final action by an agency from which an "appeal" could be taken; indeed, there has been no such final agency action to the present date.

On November 8, 1999, an OEA Senior Administrative Judge issued an "Order to Employee Regarding Jurisdiction." This Order provided, in pertinent part, as follows:

My review of the file reveals a jurisdictional problem. The matter that is the subject of the Court case concerns Employee's claim that he was mislead [sic] by Agency as to the salary he would receive upon commencing his tenure with Agency. This type of claim is the proper subject of a grievance. This Office, at the time this petition was filed, had jurisdiction over "*a final Agency decision* ... resolving a grievance." D.C.Code Ann. § 1–606.3(a) (1992 repl.)

---

1. *See* 5 U.S.C. § 8336(a) ("An employee who is separated from the service after becoming 55 years of age and completing 30 years of service is entitled to an annuity.").

2. District of Columbia law relating to the offset of annuity payments, formerly governed by federal law but presently codified in D.C.Code § 1–611.03 (Supp.2003), has had a somewhat complex history. In light of our disposition of this appeal on jurisdictional grounds, we do not address this history, except to note that the offset was applicable to White because he had worked for the District of Columbia government prior to October 1, 1987. 5 C.F.R. § 837.102.

3. In his complaint, Mr. White alleged not only fraudulent misrepresentation, but also that

Ms. Avant "should have known" that her representation was false (*i.e.*, negligent misrepresentation), as well as breach of contract. The breach of contract claim was dismissed by the court prior to trial, and White does not challenge that dismissal in this appeal. During the course of the trial, the judge ruled that any claim of negligent misrepresentation had been waived. White challenges this ruling on appeal, but in light of our disposition on jurisdictional grounds, we need not reach this issue.

4. At the time this controversy arose, the CMPA was codified in D.C.Code §§ 1–601.1 *et seq.* (1992 Repl.).

(emphasis added). However, the record currently before me contains no evidence that Employee initiated the grievance process with Agency either before or after the Court's Order, let alone received the "final Agency decision" on such grievance that would trigger our jurisdiction. Thus, it appears that the petition for appeal is premature. In the absence of a final Agency decision, the Office has no jurisdiction over this appeal. Employee is advised that the Order of the Court is not a "final Agency decision," nor does it give this Office jurisdiction over the matter.

Therefore, Employee is hereby ORDERED to submit to me, by the close of business on November 18, 1999, a copy of any grievance filed with Agency on this matter, and a copy of a final Agency decision on that grievance.

(Emphasis in original.)

In response to this order, White agreed that there was a "jurisdictional problem," but he disagreed with the Administrative Judge's characterization of that problem. According to White, OEA lacked jurisdiction because that Office "cannot grant the relief that Employee seeks: waiver of the federal annuity offset provisions and the restoration of money denied him by virtue of the application of the offset provisions." White asserted that "[t]he District government does not control the relief that would restore the money deducted as an offset from the Employee's salary."

On December 21, 1999, the Administrative Judge ruled that the OEA lacked jurisdiction over White's case. He noted that at the time White's submission was

filed, an employee had the right to appeal to the OEA, *inter alia,* from "a final agency decision ... resolving a grievance." D.C.Code § 1-606.3(a) (1992 Repl.).[5] A "grievance" was defined in D.C.Code § 1.603.1(10) (1992 Repl.) as "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees." Applying these provisions, the Administrative Judge dismissed White's "appeal" for the following reasons:

It may be argued that Employee's claim that he was *denied the salary that he and the agency apparently agreed upon* is a matter "under the control of the District government" and obviously affects his "interest, concern, or welfare." Assuming such to be the case, then the Office's jurisdiction over this grievable matter is invoked only upon the issuance of a final Agency decision denying the requested relief. Such a decision must come from the District agency for which the employee works. Here, that Agency is the Office of the Inspector General. However, Employee has not only failed to present a final Agency decision, but has failed to show that he even initiated a grievance with the agency. Thus, I conclude that the Office lacks jurisdiction over the matter and that it must therefore be dismissed.

On the other hand, Employee argues that the appeal fails for lack of jurisdiction by this Office because "the District government does not control the relief that would restore the money deducted as an offset from the Employee's salary."[6] Assuming *arguendo* that Employ-

---

5. In 1998, § 1-606.3(a) was amended to permit appeals to the OEA only if
    1. a final agency decision affecting a performance rating which results in removal of an employee;
    2. an adverse action for cause that results in removal, reduction in grade, or suspension for 10 days or more;

    3. a reduction in force.
*See* D.C.Code § 1-606.03(a) (2001).

6. If White's claim is indeed one over which the District government has no control (as White alleged to the OEA but not in his civil action), then his action would have to be

ee is correct that the matter is not under the control of the District government, then he is also correct that jurisdiction does not lie with this Office, since the action of which he complains would fall outside of the definition of a grievance. (Emphasis in original; footnote omitted.)

White did not seek judicial review of the OEA decision, but returned to the Superior Court. In that court, the stay of White's civil action was vacated. On December 10, 2001, the case came to trial before Judge Linda K. Davis. The jury returned a verdict in favor of the District and Ms. Avant, and judgment was entered on December 21, 2001. This appeal followed.

## II.

■ The District and Ms. Avant argued in the trial court, and maintain on appeal, that Mr. White's sole recourse for Ms. Avant's alleged misrepresentation was to file a grievance with the Office of Inspector General and to seek administrative relief pursuant to the CMPA. We agree.

In *District of Columbia v. Thompson,* 593 A.2d 621 (D.C.), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), the plaintiff, an employee of the District's public library, brought an action in tort against the District and against her supervisor, alleging assault and battery, defamation, and intentional infliction of emotional distress. This court held, over the dissent of the writer of this opinion, that the CMPA constituted Ms. Thompson's sole remedy for the allegedly tortious conduct on the part of the defendants, to the exclusion of a common law action for damages. *Id.* at 633–35. The court stated that the CMPA provided "a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." *Id.* at 634. Accordingly, the

court held that the employee's suit must be dismissed.

The essence of Mr. White's claim, as we have noted, was that Ms. Avant misrepresented to him that a waiver had been obtained, and thus led him to believe that he would receive the full annual salary of $91,000 plus benefits from the District, without any reduction on account of his receipt of a pension from the federal government. This claim, at least arguably, could properly have been brought under the CMPA. Although the alleged misrepresentation was made before White started in his new position, "[t]he CMPA explicitly contemplate[d] ... that applicants for employment may file grievances." *Grillo v. District of Columbia,* 731 A.2d 384, 386 (D.C.1999) (citing D.C.Code § 1–617.2 (1992 Repl.)). We know of no principled difference, for purposes of the applicability of the CMPA, between the torts at issue in *Thompson*—namely assault and battery, defamation, and intentional infliction of emotional distress—and the wrong claimed by White, namely, fraudulent or negligent misrepresentation. Indeed, the OEA ruled in the present case that White's claim was "the proper subject of a grievance," and White neither contested this conclusion nor sought judicial review of the OEA's ruling.

Moreover, even assuming, *arguendo,* that a substantial question existed as to whether a claim of fraudulent misrepresentation fell within the ambit of the CMPA, White was still required in the first instance to invoke the CMPA's grievance procedure. "We have held that if a substantial question exists as to whether the CMPA applies, the Act's procedures must be followed, and the claim must initially be submitted to the appropriate District agency .... A substantial question arises unless the injury is clearly not com-

dismissed because he has sued the wrong defendants.

pensable under [the] CMPA." *Grillo,* 731 A.2d at 386 (citations and internal quotation marks omitted). We recently reiterated in *Armstead v. District of Columbia,* 810 A.2d 398 (D.C.2002)—a case in which, as in the matter before us, the plaintiff alleged fraudulent and negligent misrepresentation and breach of contract—that "[t]he determination whether the OEA has jurisdiction is 'quintessentially a decision for the OEA to make in the first instance.'" *Id.* at 400 (quoting *Grillo,* 731 A.2d at 386 (quoting *Taggart–Wilson v. District of Columbia,* 675 A.2d 28, 29 (D.C. 1996))).[7]

■ In the present case, it is undisputed that Mr. White never filed the requisite grievance with the Office of the Inspector General. Thus, although his case did come before the OEA as a result of Judge Keary's 1997 order, there had been no final agency ruling subject to the OEA's review. As the OEA observed in its decision, White failed to initiate a grievance with the Office of the Inspector General, as required to invoke the jurisdiction of the OEA to review his claim. Having failed to submit his claim initially to the appropriate District agency, White effectively waived his rights. "When a claim is cognizable under the CMPA, that statute provides the complainant with his or her exclusive remedy, and suits in tort are generally preempted." *Grillo,* 731 A.2d at 385 (citations omitted). "We have held that if a substantial question exists as to whether the CMPA applies, the Act's pro-

cedures must be followed, and the claim must be initially submitted to the appropriate District agency." *Id.* at 386 (citation and internal quotation marks omitted); *see also Armstead,* 810 A.2d at 400 (quoting *Grillo*).

White asserts that under the CMPA, he could not recover the damages for fraudulent misrepresentation that would be available to him in a tort action. Therefore, according to White, his claim did not involve a "matter under the control of the District government," and could not be the subject of a grievance. We have found comparatively little in the way of precedent defining the kind of relief that could properly have been awarded to White in an administrative proceeding instituted pursuant to the CMPA.[8] White may well be justified in assuming that he could not recover under the CMPA all of the relief which he has requested in his Superior Court action. *See Bridges v. Kelly,* 318 U.S.App. D.C. 30, 37 & n. 10, 84 F.3d 470, 477 & n. 10 (1996) (stating that the relief available from the OEA in a proceeding under the CMPA is "far narrower" than the remedies, including compensatory and punitive damages, that the employee was seeking in his action pursuant to 42 U.S.C. § 1983); *see also Crockett v. District of Columbia Metro. Police Dep't,* 293 F.Supp.2d 63, 67 (D.D.C.2003) (stating that the OEA was "not authorized to grant punitive damages or compensatory damages in excess of back pay and benefits"). The unavailability under the CMPA of re-

---

7. In this case, the OEA's lack of jurisdiction was not based on the subject matter of the claim, but rather on Mr. White's failure to file the required grievance with the Office of the Inspector General. Therefore, the OEA's lack of jurisdiction did not have the effect of vesting original jurisdiction in the Superior Court.

8. This court stated in *Thompson* that the

CMPA defines OEA's power to grant relief very broadly. The Act permits OEA to "uphold, reverse, or modify the decision of the agency" and to take "appropriate corrective actions" and "corrective or remedial actions." D.C.Code §§ 1–606.3(b), –617.2, –617.3(b) [(1992 Repl.)].
593 A.2d at 635 n. 25. The court indicated that the plaintiff "would have been able to seek reinstatement, and perhaps back pay." *Id.* at 635.

lief that may be awarded in constitutional or tort litigation is, however, essentially irrelevant. Noting that administrative proceedings instituted pursuant to the CMPA have advantages for the employee, as well as disadvantages, in comparison to common law tort actions, the court in *Thompson* made it clear that the CMPA provided the sole remedy for District employees in actions of this kind.[9] An exclusive remedy does not lose its exclusivity upon a showing that an alternative remedy might be more generous. Because White has not taken the requisite steps to avail himself of his administrative remedy, we need not decide what, if any, relief would be appropriate if he had filed a timely grievance with the Office of the Inspector General.

### III.

We recognize that our disposition of this case on procedural grounds precludes a decision on the merits (which is generally more satisfying),[10] and that the result we reach may fairly be characterized as less than generous to District employees who have been subjected to tortious conduct by agents of the District. That result is, however, compelled by *Thompson* and its progeny. Accordingly, the judgment of the trial court is vacated. The case is remanded to the trial court with directions to dismiss White's complaint for lack of jurisdiction.

*So ordered.*

---

9. The court stated in *Thompson*:
   [T]he CMPA does not require an employee to overcome the qualified immunity of government officials as would be required in a common law damage action .... Moreover, CMPA procedures are speedier and less costly than litigation. In sum, the benefits of CMPA's administrative procedures cou-pled with judicial review are substantial when balanced against the costs, including delays, in obtaining damage remedies.
   593 A.2d at 635.

10. In this case, however, at least at the trial court level, White lost on the merits as well.