Joseph W. LATTISAW, Jr.,
et al., Appellants

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 04–CV–70.

District of Columbia Court of Appeals.

Argued April 5, 2005.

Decided Aug. 24, 2006.

Henry E. Weil, Rockville, MD, for appellants.

Harold L. Talisman, Washington, DC, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellee.

Before FARRELL, Associate Judge, and TERRY and SCHWELB, Senior Judges.*

TERRY, Senior Judge:

The trial court dismissed appellants' complaint against the District of Columbia for failure to exhaust administrative remedies. Appellants contend that the court erred because their appeal from a final decision on a grievance-based personnel complaint could not permissibly go before the Office of Employee Appeals ("OEA") and was therefore properly submitted in the first instance to the trial court. We affirm the order of dismissal.

I

Appellant Joseph Lattisaw is a Metropolitan Police officer. His Superior Court complaint alleged that in September 2002 he was approached by a lieutenant, whom he did not know, in the men's room of the police station where he was on duty. While standing behind appellant, the lieutenant allegedly said, "You have a fine ass there, Officer." Mr. Lattisaw immediately reported the unsolicited comment to his superior officer and, either then or later (the record is not clear about this), submitted a written administrative complaint (Metropolitan Police Department Form PD–42)[1] about the incident. He was told

---

* Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

   Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

1. Although this document is not in the record, the District in its brief states, without contradiction, that it was "an administrative complaint on Form PD–42." To avoid confusing it with the complaint which appellants filed in their civil action, we shall henceforth refer to the administrative complaint simply as "Form PD–42." We shall use the term "complaint"

that the matter would be investigated. The Superior Court complaint further alleged that on or about October 9, 2002, the police department "through its servants, agents and employees" altered his Form PD–42 in such a way as to state that Mr. Lattisaw had initiated the sexual advances in the men's room, thus suggesting that his initial filing was untruthful. The altered PD–42 was then "publicly posted in the station house," where it was read by "unknown persons." Appellants alleged below that this "alteration and public posting" of his Form PD–42 "constitute[d] a defamation of the Plaintiff [Lattisaw]" and caused him to suffer "embarrassment, humiliation, scorn, ridicule, and mental stress," resulting in a need to seek medical treatment and a loss of income due to lost time from work.

Mr. Lattisaw never filed a grievance with the Metropolitan Police Department ("MPD") based on this alleged "public posting" of his Form PD–42 in its altered form. Instead, Mr. Lattisaw, joined by his wife, Sharon Spaulding, filed this civil action in the Superior Court seeking a total of $16 million in damages (including $5 million in punitive damages) for defamation, negligent infliction of emotional distress, and loss of consortium, based on the police department's alleged publication of the altered PD–42. The District filed a motion to dismiss the complaint, arguing that appellants had failed to exhaust available administrative remedies before filing suit. Specifically, the District contended

that the Comprehensive Merit Personnel Act ("CMPA")[2] provided appellants with their exclusive remedy against the District.[3] Appellants filed an opposition, but the trial court granted the motion to dismiss and also denied a motion for reconsideration. Appellants noted this appeal on January 20, 2004.

On January 29, 2004, appellant Lattisaw filed with the OEA a "petition for appeal" from the final decision of the MPD rejecting his original claim about the incident in the men's room.[4] On March 3, 2005, the OEA dismissed his petition, holding that under D.C.Code § 1–606.03(a), as amended in 1998, it no longer had jurisdiction to consider an appeal from the denial of an employee grievance.

## II

■ Appellants contend that because their claim is not governed by the CMPA, the trial court erred in dismissing their complaint. Specifically, they argue that their claim does not fall within the CMPA's statutory definition of "grievance," and that the District is therefore barred from asserting that the trial court lacked jurisdiction. Because the District made its jurisdictional argument below, appellants also claim that the District acted in bad faith, in violation of Super. Ct. Civ. R. 11, by advancing two seemingly incompatible positions: asking the court to dismiss the complaint because it lacked jurisdiction while "conced[ing] that [appellants'] claims for defamation and negligent

to refer only to the pleading filed in the Superior Court.

2. D.C. Law 2–139, 25 D.C. Register 5740 (1979), codified at D.C.Code §§ 1–601.01 et seq. (2001).

3. As far as we can tell from the record, Ms. Spaulding is not an employee of the police department. In other circumstances this fact might prompt us to inquire whether she has a

duty to exhaust administrative remedies. In this case, however, we need not do so, since the parties are in agreement that her claim should be treated as totally derivative of that of her husband.

4. That decision is not in the record. The petition for appeal, however, is reproduced in the joint appendix.

infliction of emotional distress do not fall within the purview of the OEA, and thus, [that] OEA lacks jurisdiction" as well.

■■■ In reviewing the purpose and text of the CMPA, this court has concluded that its drafters " 'plainly intended' to create a mechanism for addressing virtually every conceivable personnel issue [between] the District [and] its employees...." *District of Columbia v. Thompson*, 593 A.2d 621, 634 (D.C.), *cert. denied*, 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991). Accordingly, the courts retain only a "reviewing role" as a "last resort, not a supplementary role ... as an alternative forum." *Id.* Thus an employee of the District of Columbia must bring to an administrative tribunal, not the Superior Court, any complaint "arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions." *Id.* at 635; *see Stockard v. Moss*, 706 A.2d 561, 564 (D.C.1997); D.C.Code § 1–606.01 *et seq.* (2001). Furthermore, when a "substantial question" exists regarding the applicability of the CMPA, "the Act's procedures must be followed, and the claim must be initially submitted to the appropriate District agency." *White v. District of Columbia*, 852 A.2d 922, 926 (D.C.2004) (citing *Grillo v. District of Columbia*, 731 A.2d 384, 386 (D.C. 1999)). The "appropriate District agency" in this instance was the Metropolitan Police Department.

■■ As a "general rule," when a public employee initiates a grievance proceeding against the District, "the matter will be resolved either under detailed CMPA procedures or under a CMPA-sanctioned collective bargaining agreement." *Stockard*, 706 A.2d at 564.[5] We have repeatedly

relied on this general rule in cases involving allegations of tortious conduct in the workplace. In *Thompson*, for example, we held that the CMPA barred litigation of an employee's defamation and emotional distress claims "in the first instance" in the Superior Court. 593 A.2d at 634. *See also White*, 852 A.2d at 925 (discussing *Thompson* and stating that the CMPA provided the appellant's "sole remedy for the allegedly tortious conduct on the part of the [appellees], to the exclusion of a common law action for damages"). On these grounds, we ordered the dismissal of the employee's defamation and emotional distress claims. *Thompson*, 593 A.2d at 636.

The CMPA defines a grievance, in relevant part, as "any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees." *Baker v. District of Columbia*, 785 A.2d 696, 697 (D.C.2001), citing D.C.Code § 1–603.01(10) (definition of "grievance"). Furthermore, for the purpose of determining the CMPA's applicability, our case law has emphasized that "grievances" are to be broadly construed. In *White*, for instance, we said that "[w]e know of no principled difference, for the purposes of the applicability of the CMPA, between the torts at issue in *Thompson*—namely, assault and battery, defamation, and intentional infliction of emotional distress—and the wrong claimed by White, namely, fraudulent or negligent misrepresentation." 852 A.2d at 925. Agreeing with an OEA decision, we held that the tort of misrepresentation was "the proper subject of a grievance." *Id.* Thus, since the appeal from the denial of an administrative complaint in that case should properly have been brought to the

**5.** There is no indication in this case that a collective bargaining agreement might have

any bearing on appellants' claim.

OEA in the first instance, we remanded the case and directed the trial court to dismiss White's suit for lack of jurisdiction. *See also Stockard*, 706 A.2d at 564 (affirming trial court ruling that appellant's defamation action was "indistinguishable from the action preempted by the CMPA in *Thompson*" and holding that the CMPA "implicitly preempts claims of wrongful treatment and injury cognizable as a 'personnel issue' under the Act's ... 'employee grievances' provisions"). As in these cases, appellants' allegations easily fall within the CMPA's broad definition of "grievance."

■ The District of Columbia Office of Personnel has promulgated a detailed set of regulations governing employee grievances, specifically including grievances asserted by members of the Metropolitan Police Department. *See* Notice of Final Rulemaking, 47 D.C. Register 7094 (September 1, 2000). As the District notes in its brief, these regulations "set forth in detail the matters that may or may not be grieved and provide detailed instructions for submitting grievances." *See* 6 DCMR §§ 1630–1637, 47 D.C. Register 7109–7114. Thus, among other things, an employee seeking a remedy for an alleged wrong in the workplace must file "in writing" a grievance containing "sufficient detail to identify and clarify the basis for the griev-

ance," and specifying "the relief requested." 6 DCMR § 1636.1, 47 D.C. Register 7113. That these procedures are exclusive and mandatory is firmly established by our case law, particularly *Thompson*, and parallel common-law tort actions are "implicitly preempt[ed].... " *Stockard*, 706 A.2d at 564. "With few exceptions"—and this case does not present such an exception [6]—the CMPA and the grievance procedures established under it, such as those set forth in the regulations, provide "the exclusive remedy for a District of Columbia public employee who has a work-related complaint *of any kind." Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C.2000) (citation omitted; emphasis added).

Appellant Lattisaw was thus required to submit a grievance in writing to the MPD, pursuant to published regulations that have been on the books for years, if he sought a remedy for the alleged defamation and emotional distress resulting from the "public posting" of his altered Form PD–42 on the bulletin board of the police station. Instead, however, he bypassed the grievance procedures entirely and filed this civil action in the Superior Court.[7] Appellants contend that this was a proper course because the OEA has no jurisdiction to consider an appeal from the denial of a grievance, which in fact is true. *See* 6 DCMR § 1636.8, 47 D.C. Register 7113.[8] But that does not matter. The administra-

---

**6.** The only significant exception that this court has recognized thus far is for claims arising under the District of Columbia Human Rights Act (DCHRA). *See King v. Kidd*, 640 A.2d 656 (D.C.1993). No DCHRA claims are presented in the instant case.

**7.** At oral argument, when a member of the court remarked, "There is nothing in your brief that says that you even attempted to go through a grievance procedure," appellants' counsel conceded, "We did not."

**8.** Section 1636.8 states:
   The decision of the grievance official to deny the grievance, in whole or in part,

shall be the final administrative decision, and shall not be subject to further administrative appeal.
D.C.Code § 1–606.03(a), part of the CMPA, formerly permitted an employee to appeal to the OEA from, among other things, "a final agency decision ... resolving a grievance." The statute was amended in 1998, however, to eliminate this provision. *See* D.C. Law 12–124, § 101(d)(1), 45 D.C. Register 2464. The CMPA now limits appeals to the OEA to three types of cases, none of which involves grievances. *See White*, 852 A.2d at 924 n. 5.

tive remedy that appellant Lattisaw failed to exhaust was the grievance procedure within the MPD, not any purported "appeal" to the OEA. Any issue relating to the jurisdiction of the OEA is thus nothing more than a red herring, and the discussion of OEA jurisdiction in the briefs is beside the point.[9]

■ Some confusion seems to have resulted from the fact that Mr. Lattisaw had not one but two separate claims against the police department. Claim No. 1 was based on the incident in the men's room in September 2002, in which a lieutenant allegedly made an indecent comment to him. That claim was the subject of a grievance, which he filed with the MPD in accordance with the regulations. After that grievance was denied, he sought appellate review of the denial by filing a petition for appeal with the OEA. Claim No. 2 is entirely separate. It was based not on the incident in the men's room, but on the alleged "alteration and public posting" of his Form PD–42 in the police station. The latter claim, as appellants concede, was never the subject of a grievance. It is Mr. Lattisaw's failure to file a grievance based on Claim No. 2, and nothing more, that requires us to conclude that the trial court committed no error in dismissing his civil complaint. "[T]he failure to pursue the initial step in the administrative process does not relieve a party of the exhaustion of administrative remedies requirement." *Davis & Associates v. Williams,* 892 A.2d 1144, 1150 (D.C.2006). The OEA's disposition of Claim No. 1 has no bearing on the outcome of this appeal.[10]

The trial court's dismissal of appellants' complaint is therefore

*Affirmed.*

■

9. It is true that the District, in moving to dismiss appellants' complaint in the trial court, said—erroneously—in a memorandum that an employee of the MPD "may appeal his complaint to the ... Office of Employee Appeals (OEA)." The District concedes in its brief that this statement was incorrect, citing the 1998 amendment to the CMPA, *supra* note 8. We attach no significance to the District's error. We note in any event that the trial court dismissed appellants' complaint not on the ground that the OEA was the proper forum, but in order "to allow submission of the plaintiffs' claims pursuant to the [CMPA]," without further comment as to how those claims should be submitted, or to which administrative tribunal. The trial court's order does not even mention the OEA.

10. The petition for appeal involving Claim No. 1 states that the grievance was denied on March 17, 2003. Jurisdictional issues aside, the petition of appeal should have been filed within thirty days from "the effective date of the appealed agency action." D.C.Code § 1–606.03(a). It was not filed with the OEA, however, until January 2004, which was much too late. The OEA in any event rejected the appeal, not because it was untimely but because it had no jurisdiction to consider it at all. See note 8, *supra.* The reason for the OEA's decision is irrelevant here, since the instant litigation involves only Claim No. 2, not Claim No. 1.